STATE OF CONNECTICUT *v.* NATHANIEL D. REEVES
(AC 30301)

Bishop, Lavine and Dupont, Js.

Argued September 15, 2009—officially released January 5, 2010

*Cameron R. Dorman*, special public defender, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Robert F. Mullins, Sr.*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Nathaniel D. Reeves, appeals from the judgment of conviction, rendered after a trial to the court, of unlawful restraint in the first

degree in violation of General Statutes § 53a-95[1] and assault in the third degree in violation of General Statutes § 53a-61 (a) (1).[2] The defendant also was charged, in a part B information, with being a persistent offender of assault under General Statutes § 53a-40d. After the trial court's finding of guilty, as to the substantive offenses, the defendant pleaded guilty to the charge of being a persistent offender. On appeal, the defendant claims that the court (1) improperly admitted impermissible hearsay statements in violation of § 8-2 of the Connecticut Code of Evidence[3] and (2) violated his right

[1] General Statutes § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

[2] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person . . . ."

[3] Interspersed in the defendant's appellate brief, discussing the first issue, are claims of judicial bias. The claims are inadequately briefed, and we decline to address them. "We are not obligated to consider issues that are not adequately briefed. . . . Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived." (Internal quotation marks omitted.) *418 Meadow Street Associates, LLC* v. *One Solution Services, LLC*, 117 Conn. App. 651, 655, 980 A.2d 345 (2009).

We also note that the claim of bias is patently unfounded. The defendant makes the blanket assertions that bias was shown because evidentiary rulings against him were based on a standard different from similar evidentiary rulings in favor of the state and that defense counsel was admonished with respect to minor procedural matters, such as the need to stand when making an objection. An adverse ruling by a court does not automatically imply bias or prejudice. If bias were to be implied because of an adverse ruling or because of the insistence of a court that formalities be observed in a courtroom, the conclusion that bias was shown would be inevitable.

A court's ruling adverse to a party may occur because it was the correct ruling as a matter of law or because of the ineptitude of the party claiming bias. The defendant did not file a motion for recusal, disqualification or mistrial. The unpreserved claims of judicial bias do not qualify as plain error, and the conduct questioned does not reasonably give an appearance of impropriety. The claims are nothing more than an assertion that adverse rulings constitute evidence of bias. Such a claim does not demonstrate bias. See *Peatie* v. *Wal-Mart Stores, Inc.*, 112 Conn. App. 8, 26, 961 A.2d 1016 (2009).

to present a defense by precluding him from presenting testimony from his alibi witnesses at trial. We affirm the judgment of the trial court.

In its oral decision, the court cited the testimony of four witnesses for the state and one for the defendant. The court discussed its decision, concluding, after deliberation, that the elements of the offenses were proven beyond a reasonable doubt, noting especially that the testimony of the victim, Kimberly Gillette, was credible. Gillette testified that during an altercation with the defendant on February 25, 2007, he pushed her to the ground, got on top of her and used his hands to choke her. As a result of the defendant's choking her, Gillette felt pain in her neck. She testified that she could not breathe, felt dizzy and was scared that she would die. Eventually, she managed to flee from the defendant and called the Hartford police department. The police directed Gillette to go to the Saint Francis Hospital and Medical Center emergency room, where she was seen by medical personnel. A staff nurse at the hospital, Harvey A. Ginsberg, testified that Gillette had scratches or some red marks on her neck. He also testified that Gillette's injuries were consistent with her having been choked.

I

The defendant first claims that the court improperly allowed the state to introduce certain testimony in violation of § 8-2 of the Connecticut Code of Evidence.[4] Specifically, the defendant claims that he was not allowed to object to improperly admitted hearsay statements, namely, the testimony of Gillette regarding statements that the defendant's sister made to Gillette. We disagree.

---

[4] Section 8-2 of the Connecticut Code of Evidence provides: "Hearsay is inadmissible, except as provided in the Code, the General Statutes or the Practice Book."

The following additional facts are relevant to the defendant's claims. Gillette testified that on the night of the assault, she had received a telephone call from the defendant asking her to pick him up at his sister's home in New Britain. When she arrived there, at approximately 11 p.m., the defendant asked her to drive him to his brother's home at 61 Evergreen Avenue in Hartford. She did not want to take him there but, rather, wanted him to come to her home in Massachusetts. The state then questioned Gillette about the defendant's drug use, as follows:

"[The Prosecutor]: You were in a relationship with [the defendant] for two years?

"[The Witness]: Over two years.

"[The Prosecutor]: Over two years. And during that time did you know that he had a drug problem?

"[The Witness]: Yes, I did.

"[The Prosecutor]: And how did you become aware of that?

"[The Witness]: His sister told me. I've seen him use drugs. I've seen him go to the drug house to purchase drugs. I've picked him up from the drug house. I've never been inside, but I've been outside.

"[Defense Counsel]: Objection, Your Honor, hearsay. . . .

"The Court: Now, what is your objection? Is hearsay as to the last one?

"[Defense Counsel]: The witness is testifying as to what the sister said to her, Your Honor, an out-of-court statement.

"The Court: Well, that was already asked and answered and we're past that, so the question outstanding referred to an answer concerning the drug house.

"[Defense Counsel]: Yes, Your Honor, which information was, which the witness is testifying to, was told to her by the sister of the defendant.

"The Court: Yes, but you didn't object to that.

"[Defense Counsel]: Thank you, Your Honor.

"The Court: Objection is overruled.

"[The Prosecutor]: Thank you, Your Honor."

Gillette then testified, without objection, as to facts regarding the defendant's drug use, stating that she personally had seen the defendant use crack cocaine and had previously taken him to 61 Evergreen Avenue where, he told her, he had bought and used drugs. She did not want to take him there because he would get high. She testified that "[t]hat's the only thing he did there." Gillette then testified that if the defendant went inside to get high, she would not take him to her home because when he got high, he was paranoid, delusional and scary. On cross-examination by defense counsel, Gillette testified that 61 Evergreen Avenue is a known drug house where the defendant resided off and on when using drugs. Gillette continued to see the defendant after February 25, 2007, the night on which the crimes occurred, "[t]o try and get him to come back and get clean from drugs."

There was only one objection by the defendant concerning Gillette's entire statement. The defendant claims that Gillette's first statement, "his sister told me," is inadmissible hearsay. The defendant also claims that Gillette's subsequent statements regarding the "drug house" are potentially hearsay.

The defendant first claims that the court abused its discretion by allowing Gillette's hearsay statement, "his sister told me," into evidence because his objection was untimely. We disagree.

We first set forth our standard of review of the court's denial of the defendant's objection to inadmissible hearsay on the basis of an untimely objection. "We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . The trial court has wide discretion to determine the relevancy [and admissibility] of evidence . . . . In order to establish reversible error on an evidentiary impropriety . . . the defendant must prove both an abuse of discretion and a harm that resulted from such abuse. " (Citations omitted; internal quotation marks omitted.) *State* v. *Cecil J.*, 291 Conn. 813, 818–19, 970 A.2d 710 (2009).

"The generally accepted rule as to when [an] objection to a question must be interposed has been stated to be: 'For evidence contained in a specific question, the objection must ordinarily be made as soon as the question is stated, and before the answer is given; unless the inadmissibility was due, not to the subject of the question, but to some feature of the answer.' 1 Wigmore, Evidence (2d Ed.) 175, § 18, a, (1). This rule, however, is to be reasonably applied. Thus in an opinion quoted by Wigmore in this connection, the court, in referring to a rule of court of similar import, said: 'It must have a reasonable interpretation. The object is to prevent a party from knowingly withholding his objection, until he discovers the effect of the testimony, and then if it turns out to be unfavorable to interpose his objection.' " *Hackenson* v. *Waterbury*, 124 Conn. 679, 683, 2 A.2d 215 (1938); see also *State* v. *McClelland*, 113 Conn. App. 142, 156, 965 A.2d 586 ("[i]n general, objections to the answer to a question should be made before the next question"), cert. denied, 291 Conn. 912, 969 A.2d 176 (2009).

Therefore, to evaluate the defendant's claim, we first need to assess whether the question asked of Gillette was one that would likely elicit an answer involving hearsay, and, if not, we need to assess the speed with which the objection should have been made if it became apparent that the answer contained hearsay.

On the basis of the prior testimony regarding the long-term relationship between Gillette and the defendant, the question as to how she became aware of the defendant's drug problem likely would not involve statements of others but would involve her own knowledge. Thus, the question itself would not reasonably be expected to elicit an answer that would contain hearsay. The defendant, therefore, need not have objected as soon as the question was asked.

The defendant objected prior to the next question, but his objection was untimely because he waited until Gillette's entire answer was forthcoming before objecting.[5] A party may not wait to discover the effect of the answer and then object. *Hackenson* v. *Waterbury*, supra, 124 Conn. 683. We, therefore, find no abuse of discretion for the court not to strike the answer or to overrule the defendant's objection. See *State* v. *Gonzalez*, 75 Conn. App. 364, 373–74, 815 A.2d 1261 (2003), rev'd on other grounds, 272 Conn. 515, 864 A.2d 847 (2005). Even if improperly left to stand, Gillette's answer that the defendant's sister told her about the defendant's drug abuse was cumulative of other validly admitted testimony from Gillette. Consequently, any

[5] It is clear from the record that the court believed that the defendant's objection was untimely because it was under the impression that another question had been asked of Gillette after her statement, "his sister told me." If defense counsel knew that only one question had been asked of Gillette at the time of his objection, he should have clarified this fact to the court. See *State* v. *Thornton*, 112 Conn. App. 694, 710, 963 A.2d 1099 (if defense counsel believed court's ruling was unclear, it was defense counsel's obligation to seek further clarification), cert. denied, 291 Conn. 914, 969 A.2d 175 (2009).

impropriety in the admission of the sister's knowledge of the defendant's drug use was harmless error and does not require reversal of the judgment of conviction. *State* v. *Gonzalez*, 272 Conn. 515, 528–29, 864 A.2d 847 (2005).

The defendant next claims that Gillette's other statements in her answer to how she became aware of his drug problem that referred to the "drug house," are potentially hearsay. Specifically, the defendant argues that "[w]ith regard to the defendant's objection that the nature of the drug house was information obtained from the defendant's sister, the trial court completely ignored his objection. As a result, the trial court improperly admitted the potential hearsay regarding the drug house." We disagree.

"To the extent [that] a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Citations omitted.) *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007). Accordingly, in the present case, our standard of review is plenary.

"Hearsay means a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the truth of the matter asserted. Conn. Code Evid. § 8-1 (3). Hearsay is generally inadmissible unless an exception in the Code of Evidence, the General Statutes or the rules of practice applies. Conn. Code Evid. § 8-2." (Internal quotation marks omitted.) *State* v. *Foster*, 293 Conn. 327, 334, 977 A.2d 199 (2009).

Nothing in Gillette's statements indicates that her knowledge that 61 Evergreen Avenue was a known "drug house" was obtained from anyone else or that it was not made from her own observations. The prosecutor did not continue to question Gillette to determine whether her statements about the "drug house" were hearsay. Nor did defense counsel cross-examine Gillette as to whether she relied on statements of others for her testimony. Furthermore, Gillette's statements, on their face, do not indicate that she relied on statements made by the defendant's sister or others. We conclude that the court properly admitted Gillette's statements regarding the "drug house."

## II

The defendant also claims that the court violated his right to present a defense by refusing to permit his alibi witnesses to testify. We disagree.

Because the defendant did not preserve his claim at trial, he requests review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and the plain error doctrine. See Practice Book § 60-5. "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *King*, 289 Conn. 496, 502–503, 958 A.2d 731 (2008). The first two prongs of *Golding* involve a determination of whether the claim is reviewable, and the second two involve a determination of whether the defendant may prevail.

*State* v. *Whitford*, 260 Conn. 610, 621, 799 A.2d 1034 (2002).

In this case, there is an adequate record and a claim of constitutional magnitude alleging the violation of a fundamental right. "The defendant's right to present his own witnesses to establish a defense . . . is a fundamental element of due process of law. . . . This includes the right to present alibi witnesses. . . . The sixth amendment right to compulsory process includes the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies." (Citation omitted; internal quotation marks omitted.) *State* v. *Salters*, 89 Conn. App. 221, 226, 872 A.2d 933, cert. denied, 274 Conn. 914, 879 A.2d 893 (2005).

However, "[a] court's preclusion of alibi evidence as a sanction for failure to comply with the rules of discovery does not violate a defendant's constitutional rights per se. If the court's preclusion of alibi evidence reflects a sound exercise of discretion, the defendant cannot claim that a constitutional violation exists." Id., 227; see also *State* v. *McIntyre*, 242 Conn. 318, 330–31, 669 A.2d 911 (1997); *State* v. *Boucino*, 199 Conn. 207, 213–14, 506 A.2d 125 (1986). Thus, although the first two *Golding* conditions are met, we must next consider whether a constitutional violation clearly exists and whether the defendant was clearly deprived of his right to a fair trial.

The defendant's claim fails under the third *Golding* prong because a constitutional violation does not clearly exist, and the defendant was not clearly deprived of a fair trial. The record is completely devoid of any

evidence that the court refused to permit the defendant's alibi witnesses to testify.[6] On April 10, 2008, the

---

[6] To the contrary, the record discloses that the court was willing to allow the defendant's alibi witnesses to testify. Specifically the court stated:

"The Court: Okay. Now [defense counsel], what is your situation concerning your witnesses?

"[Defense Counsel]: I do have one witness here today, Your Honor, and I have two witnesses who are not here today and are absolutely to be here Monday and maybe tomorrow. I'm trying to get them in here—

"The Court: Well, I should inform you that I'm not going to be here Monday.

"[Defense Counsel]: I understand.

"The Court: And I'll be gone Friday through the following week.

"[Defense Counsel]: I see.

"The Court: So, this would have—if you're unable to get your witness for tomorrow, it has got to be rescheduled to a date in the future.

"[Defense Counsel]: Yes, Your Honor.

"The Court: All right. Now, is there any objection to taking the defense witness that [defense counsel] is going to have out of order?

"[The Prosecutor]: No, Your Honor. However, [defense counsel] just advised me today about a witness that is going to testify as to alibi defense that was not previously disclosed as an alibi witness, Your Honor, to the state. The state has complied with discovery, as far as the witnesses that the state is going to call, and the state believes that, at this point, to call an alibi witness at this date and time as the trial is starting is prejudicial to the state.

"The Court: [Defense counsel].

"[Defense Counsel]: Your Honor, the defense was only notified before trial on April 2; it is now April 9. We do have three witnesses as to an alibi defense and as this—right, there are three. And at the earliest opportunity that I could notify the state about this, I did, Your Honor, and unfortunately, it was this morning. And again, those are the witnesses which are scheduled for tomorrow or Monday at the latest.

"I'm sorry, and [Cynthia] Rankins, it was on the list for the defense with her date of birth. She was noted as an alibi defense witness, but she was on the list. So, that just leaves two witnesses, which also, are to testify as to alibi defense.

"The Court: All right. [Prosecutor], did you make a written demand for an alibi defense?

"[The Prosecutor]: I did not, Your Honor. . . .

"The Court: Okay. Well, this certainly is late in the game to be bringing an alibi witness. However, Practice Book § 40-21 does say upon written demand filed by the prosecutor concerning alibi defense. In order to get the time period set forth the prosecutor has to file a written notice—a written demand of alibi defense, and if that wasn't filed, I think that sort of makes it difficult for you, [the prosecutor], because the Practice Book clearly says upon written demand.

"All right. However, what I will do is, if this alibi defense is going to require investigation, you may ask for a continuance to perform investigation. I'll

defendant indicated to the court that a witness would be available to testify that day.[7] When the witness did not appear to testify, the court inquired how the defendant wanted to proceed, and the defendant responded by voluntarily resting his case. The defendant did not request a continuance to allow any alibi witnesses to testify.[8] Thus, there is no evidence that the court precluded any alibi witnesses of the defendant from testi-

also order that the defense immediately disclose the names and addresses of the witnesses that he intends to use to establish an alibi."

[7] The following colloquy occurred:

"[Defense Counsel]: I indicated yesterday, Your Honor, I have two or three witnesses that can come in on Monday at the earliest, and I don't have any witnesses for today, Your Honor.

"The Court: I thought they were coming today. . . .

"[Defense Counsel]: And I was intending to have one witness today, and then I would need a continuance for the other two witnesses actually.

"The Court: Where's the one witness. Well, then you can proceed with the one witness.

"[Defense Counsel]: [T]he witness is not here . . . .

"[The Prosecutor]: Your Honor, the state was under the impression as well that there was, at least, to be one witness today. I think, in light of the fact that the defendant has failed to appear here after having been called by defense counsel, it would appear as though he has no intention of returning to court and has failed to cooperate in his defense, Your Honor. So, the state will leave the matter to the court's discretion.

"The Court: All right. What I'm going to do is, I'm going to recess until two o'clock. I expect you to have at least one witness here at two o'clock. Because it was my recollection that you were going to have at least one witness.

"[Defense Counsel]: Yes, Your Honor."

[8] The following colloquy occurred:

"[Defense Counsel]: Your Honor, my witness this afternoon has notified me that she doesn't intend to move forward with her testimony and has made herself unavailable in this trial.

"The Court: All right. What is your intention, counselor?

"[Defense Counsel]: Well, I'm inclined to rest my case at this point, Your Honor.

"The Court: All right. All right, then, I'll note that the defense has rested. [Prosecutor], do you have any rebuttal?

"[The Prosecutor]: At this time, no, Your Honor.

"The Court: All right. All right, then, we have completed the evidentiary portion of this matter. Are we prepared to move on to the final arguments?

"The Prosecutor: Yes, Your Honor.

"The Court: All right.

"[Defense Counsel]: Yes, Your Honor."

fying. Accordingly, the defendant has not shown that a constitutional right clearly exists and was clearly violated, and his claim therefore fails under the third prong of *Golding*.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] The defendant also requests review of this claim under the plain error doctrine. Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law. . . . The court may in the interests of justice notice plain error not brought to the attention of the trial court." "The plain error doctrine is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . [I]nvocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review." (Internal quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 326, 977 A.2d 209 (2009). Nothing in the record of this case leads us to conclude that plain error exists.