11-2119-pr
Harrington v. United States

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Argued: May 4, 2012        Decided: August 6, 2012)

Docket No. 11-2119-pr

_____

STEPHEN HARRINGTON,

*Petitioner-Appellant*,

—v.—

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

_____

Before:

SACK, RAGGI, and LOHIER, *Circuit Judges*.

_____

On appeal from a judgment of the United States District Court for the District of

Connecticut (Stefan R. Underhill, *J.*) denying habeas relief from a 15-year mandatory

minimum sentence imposed pursuant to the Armed Career Criminal Act ("ACCA"), see 18

U.S.C. § 924(e), for possession of a firearm by a convicted felon, see id. § 922(g)(1),

petitioner contends that (1) sentencing counsel was ineffective in failing to challenge the

application of the ACCA to his case; (2) his prior Connecticut convictions for first-degree

unlawful restraint and sale of narcotics do not qualify as ACCA predicate offenses; and

1

(3) the ACCA's residual clause for defining violent felonies, see id. § 924(e)(2)(B)(ii), is

unconstitutionally vague.

AFFIRMED.

_____

ROBERT C. MIRTO, Law Offices of Mirto & Rasile, LLC, West Haven, Connecticut, *for Appellant*.

SARAH P. KARWAN (Robert M. Spector, *on the brief*), Assistant United States Attorneys, *on behalf of* David B. Fein, United States Attorney for the District of Connecticut, New Haven, Connecticut, *for Appellee*.

_____

REENA RAGGI, *Circuit Judge*:

Stephen Harrington is presently incarcerated serving a statutorily mandated 15-year

prison sentence under the Armed Career Criminal Act ("ACCA"), see 18 U.S.C. § 924(e),

on his guilty plea to possession of a firearm by a convicted felon in violation of 18 U.S.C.

§ 922(g)(1). See United States v. Harrington, 241 F. App'x 777, 778 (2d Cir. 2007)

(summary order affirming conviction), cert. denied, 552 U.S. 1209 (2008). Harrington now

appeals from a judgment entered on May 10, 2011, in the United States District Court for the

District of Connecticut (Stefan R. Underhill, *Judge*) denying his motion pursuant to 28

U.S.C. § 2255 to vacate the 15-year prison sentence. On appeal, he argues that

(1) sentencing counsel was constitutionally ineffective for failing to challenge application

of the ACCA to his case; (2) the sentencing court erred, in any event, in finding him to have

at least three prior convictions qualifying as ACCA predicates; and (3) the residual clause

2

of the ACCA for identifying violent felony crimes, <u>see</u> 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague on its face.

In addition to opposing these challenges on the merits, the government argues that certain of them are procedurally barred. We agree that Harrington's vagueness challenge is barred because it was not presented to the district court and is not included in the certificate of appealability. Thus, we do not address it. We need not, however, conclusively decide the remaining two procedural challenges because even if we were to resolve both of them in Harrington's favor, his appeal would nevertheless fail on the merits. We here hold that first-degree unlawful restraint under Connecticut law, <u>see</u> Conn. Gen. Stat. § 53a-95, is a violent felony under the ACCA's residual clause. This ruling, together with the fact of Harrington's two prior first-degree robbery convictions—the ACCA predicate status of which is undisputed—compel imposition of the statutorily mandated minimum 15-year prison term, <u>see</u> 18 U.S.C. § 924(e)(1), thereby defeating Harrington's challenges on appeal.

Accordingly, the district court's judgment is affirmed.

## I.     <u>Background</u>

### A.     <u>Conviction, Sentence, and Direct Appeal</u>

On January 30, 2004, Harrington was arrested in New Haven, Connecticut, in possession of two .38 caliber revolvers.[1]  At the time, he already had two prior convictions,

---

[1] According to the Pre-Sentence Report, Harrington was arrested in a taxi en route to meet a confederate—actually a confidential informant—who had proposed that they rob a drug dealer expected to be in possession of a large quantity of cash.

from 1987 and 1999, for first-degree robbery, see Conn. Gen. Stat. § 53a-134; as well as single prior convictions for the sale of narcotics, see id. § 21a-277(a); carrying a dangerous weapon, see id. § 53-206; and first-degree unlawful restraint, see id. § 53a-95. These convictions were all obtained pursuant to Alford pleas, whereby Harrington accepted responsibility for the charged criminal conduct without expressly admitting guilt. See North Carolina v. Alford, 400 U.S. 25, 37 (1970); accord United States v. Savage, 542 F.3d 959, 962 (2d Cir. 2008).

On March 17, 2005, Harrington pleaded guilty in the District of Connecticut to one count of possession of a firearm by a convicted felon, see 18 U.S.C. § 922(g)(1), pursuant to an agreement wherein the prosecution predicted a Sentencing Guidelines range of 168 to 210 months' incarceration, with a 180-month mandatory minimum sentence required by the ACCA due to his prior convictions. At sentencing, Harrington was represented by counsel from the Office of the Federal Defender, who argued that convictions obtained pursuant to Alford pleas cannot qualify as ACCA predicates. Citing this court's decision in Burrell v. United States, 384 F.3d 22, 24 (2d Cir. 2004), the district court ruled otherwise. It further ruled that Harrington's prior Connecticut convictions for first-degree robbery and first-degree unlawful restraint qualified as ACCA violent felony predicates, see 18 U.S.C. § 924(e)(2)(B)(ii), and that his conviction for sale of narcotics qualified as a serious drug offense predicate, see id. § 924(e)(2)(A)(ii). Accordingly, it sentenced Harrington to the mandatory minimum prison term of 15 years for defendants with at least three prior convictions for violent felonies, serious drug offenses, or both. See id. § 924(e)(1).

4

On direct appeal, Harrington continued to be represented by the Office of the Federal Defender. Rather than pursue an Alford-based objection to application of the ACCA to Harrington's case, counsel argued that the Sixth Amendment requires a jury, rather than a sentencing judge, to determine whether prior convictions qualify as ACCA predicates. Although this argument was not raised in the district court, we considered and rejected it on the merits in light of our decision in United States v. Santiago, 268 F.3d 151, 157 (2d Cir. 2001). See United States v. Harrington, 241 F. App'x at 778.

B.     Section 2255 Motion

On December 3, 2008, Harrington filed a pro se motion for § 2255 relief from his sentence on the ground that his sentencing and appellate counsel had been ineffective in failing to challenge the treatment of his prior convictions as ACCA predicates. After two rounds of briefing, the district court ordered that Harrington be appointed counsel under the Criminal Justice Act ("CJA"). See 18 U.S.C. § 3006A(a)(2)(B). In October 2010, Harrington's CJA counsel filed a memorandum of law synthesizing and expanding on his client's arguments as follows: (1) counsel was constitutionally ineffective in not arguing that Harrington's prior convictions for first-degree armed robbery, first-degree unlawful restraint, and sale of narcotics did not qualify as ACCA predicates; and (2) even if counsel was not ineffective, Harrington should be allowed now to challenge the use of his convictions as ACCA predicates because (a) new substantive rules of federal criminal law announced in Begay v. United States, 553 U.S. 137 (2008), and Chambers v. United States, 555 U.S. 122

5

(2009), apply retroactively on collateral review;[2] and (b) cause and prejudice exists to excuse Harrington's procedural default of these ACCA challenges, specifically, the legal bases for his arguments were not reasonably available to counsel at sentencing or on appeal, see Bousley v. United States, 523 U.S. 614, 622 (1998).

The district court denied Harrington's § 2255 motion. It found that sentencing counsel was not constitutionally ineffective because first-degree armed robbery and first-degree unlawful restraint under Connecticut law are violent felonies under the ACCA. It further concluded that those three convictions were enough to trigger the mandatory minimum sentence of 15 years' imprisonment without regard to whether Harrington's sale-of-narcotics conviction also qualified as a serious drug offense predicate.

Harrington timely appealed, moving in the district court for a certificate of appealability on five grounds: (1) sentencing counsel was ineffective in failing to argue that his four Connecticut convictions were not ACCA predicates; (2) his first-degree unlawful restraint conviction was not a violent felony; (3) his sale-of-narcotics conviction did not qualify as an ACCA predicate because it was based on an Alford plea, and there was not evidence of the type of drug involved in the offense; (4) Begay v. United States, 553 U.S.

---

[2] In Begay, the Supreme Court held that driving under the influence of alcohol does not qualify categorically as a violent felony predicate under the ACCA's residual clause because the statute forbidding driving under the influence "do[es] not insist on purposeful, violent, and aggressive conduct." 553 U.S. at 145. In Chambers, the Court applied Begay's "purposeful, violent, and aggressive conduct" standard to hold that failure to report for penal confinement likewise does not qualify categorically as an ACCA violent felony predicate. 555 U.S. at 128.

6

137, affords him a direct right to challenge his sentence; and (5) the issues raised are so novel as to excuse any procedural default at sentencing or on direct appeal. The district court summarily endorsed the certificate of appealability motion on June 14, 2011. Approximately two months later, on August 9, 2011, Harrington moved to amend the certificate to add a sixth argument not previously presented to or ruled on by the district court: the ACCA's residual clause defining non-enumerated violent felony crimes is unconstitutionally vague. On July 9, 2012, the district court denied leave to amend in light of Harrington's failure to raise the claim in his § 2255 motion.

## II.    Discussion

### A.    Standard of Review

On appeal from a district court's denial of habeas relief under 28 U.S.C. § 2255, we review factual findings for clear error and conclusions of law de novo. See Ventry v. United States, 539 F.3d 102, 110 (2d Cir. 2008). Mindful that a § 2255 motion is not a substitute for direct appeal, see Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007), we will not afford collateral review to claims that a petitioner failed properly to raise on direct review unless the petitioner shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence, see Bousley v. United States, 523 U.S. at 622; United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011). We review de novo the question whether procedural default of a claim raised for the first time on collateral review may be excused. See United States v. Thorn, 659 F.3d at 231.

7

One claim that may appropriately be raised for the first time in a § 2255 motion, "whether or not the petitioner could have raised the claim on direct appeal," is ineffective assistance of counsel. Massaro v. United States, 538 U.S. 500, 504, 509 (2003); accord Yick Man Mui v. United States, 614 F.3d 50, 54 (2d Cir. 2010). To succeed on an ineffective assistance claim, a petitioner must show that (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result. See Strickland v. Washington, 466 U.S. 668, 687–88, 692–93 (1984); accord Morales v. United States, 635 F.3d 39, 43 (2d Cir.), cert. denied, 132 S. Ct. 562 (2011). The petitioner's burden is a heavy one because, at the first step of analysis, we "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011) (quoting Strickland, 466 U.S. at 689), viewing the actions in light of the law and circumstances confronting counsel at the time, see Parisi v. United States, 529 F.3d 134, 141 (2d Cir. 2008). The determinative question at this step is not whether counsel "deviated from best practices or most common custom," but whether his "representation amounted to incompetence under prevailing professional norms." Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (internal quotation marks omitted). At the second step of analysis, a petitioner cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit. See Aparicio v. Artuz, 269 F.3d 78, 99 n.10 (2d Cir. 2001); cf. Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

8

B.      Ineffective Assistance of Counsel

With these principles in mind, we first consider Harrington's claims of ineffective assistance of counsel, which are not subject to any procedural default objections. In doing so, we are mindful that if Harrington cannot satisfy the prejudice prong of Strickland analysis because his ACCA challenge is meritless, we need not separately consider his ability to mount any such challenge for the first time on collateral review. That is, in fact, this case.

1.      Failure To Challenge First-Degree Unlawful Restraint as an ACCA Violent Felony Predicate

Harrington faults his counsel for failing to challenge whether his conviction for first-degree unlawful restraint qualified as an ACCA predicate.[3] The argument does not survive Strickland analysis.

a.      Relevant Statutory Provisions

With respect to crimes committed by adults, the ACCA defines "violent felony" as follows:

[A]ny crime punishable by imprisonment for a term exceeding one year . . . that—

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

---

[3] Harrington has sensibly abandoned the argument, raised below, that counsel was ineffective for failing to challenge whether his two first-degree robbery convictions qualified as ACCA violent felony predicates. See Conn. Gen. Stat. § 53a-134(a) (requiring proof that robbery caused serious physical injury to non-participant, defendant was armed with deadly weapon, or defendant displayed or threatened use of what he represented to be a gun); see also Universal Church v. Geltzer, 463 F.3d 218, 229 (2d Cir. 2006) ("Generally, claims not raised on appeal are deemed abandoned, at least when it is the appellant who fails to do so.").

9

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).

In Connecticut, a person is guilty of first-degree unlawful restraint "when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury." Conn. Gen. Stat. § 53a-95(a). Connecticut criminal law generally defines "restrain" as follows:

[T]o restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. As used herein "without consent" means, but is not limited to, (A) deception and (B) any means whatever, including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and the parent, guardian or other person or institution having lawful control or custody of him has not acquiesced in the movement or confinement.

Id. § 53a-91(1).

As the quoted language makes plain, the Connecticut crime of first-degree unlawful restraint does not "ha[ve] as an element the use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(e)(2)(B)(i). Nor is first-degree unlawful restraint "burglary, arson, or extortion," or a crime "involv[ing] use of explosives." Id. § 924(e)(2)(B)(ii). Thus, to qualify as a violent felony under the ACCA, first-degree unlawful restraint would have to be a crime that "involves conduct that presents a serious potential risk of physical injury to another," id., akin to that posed by one of the enumerated violent felonies, see James v. United States, 550 U.S. 192, 203 (2007).

10

b. It Was Not Objectively Unreasonable for Counsel Not To Challenge the Classification of First-Degree Unlawful Restraint as an ACCA Violent Felony

In faulting counsel for failing to argue that first-degree unlawful restraint does not fall within the ACCA's residual clause, Harrington submits that the Connecticut crime is not sufficiently similar in kind or in degree of risk to the offenses enumerated in the ACCA as violent felonies. Harrington derives the "similar in kind" requirement from the Supreme Court's decisions in Begay v. United States, 553 U.S. at 143–45 (construing ACCA's residual clause to cover only "crimes that are roughly similar, in kind as well as in degree of risk posed, to the [statutory] examples themselves" (emphasis added), and holding that driving under influence of alcohol does not qualify as ACCA predicate because, unlike enumerated crimes, it does not "typically involve purposeful, violent, and aggressive conduct" (internal quotation marks omitted)); and Chambers v. United States, 555 U.S. at 128 (holding that failure to report for penal confinement does not qualify as ACCA predicate because conduct involved in offense is "far cry from the purposeful, violent, and aggressive conduct potentially at issue" in statutorily enumerated crimes (internal quotation marks omitted)).[4] Neither of these cases, however, had been decided at the time of Harrington's 2005 sentencing or 2007 appeal. Indeed, at the time of Harrington's appeal, the Supreme Court had adopted a residual clause test that relied solely on risk analysis. See

_____

[4] As we discuss infra Part II.B.1.c, in Sykes v. United States, 131 S. Ct. 2267, 2275 (2011), the Supreme Court cautioned against "overread[ing]" Begay and Chambers, and further clarified the standard for determining whether a crime qualifies as a violent felony predicate under the ACCA's residual clause.

11

James v. United States, 550 U.S. at 203; see also Begay v. United States, 553 U.S. at 151–52 (Scalia, J., concurring in judgment) (criticizing Begay majority for "writ[ing] a different statute" in adopting additional "similar in kind" requirement); id. at 158 (Alito, J., dissenting) (stating that additional "similar in kind" requirement could not be squared with ACCA's text). Thus, at the first step of Strickland analysis, counsel cannot be deemed constitutionally ineffective for failing to anticipate later Supreme Court rulings. See Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).

To be sure, well before Begay and Chambers, defense counsel had challenged whether various state crimes qualified as ACCA violent felony predicates. See, e.g., United States v. Jackson, 301 F.3d 59, 61 (2d Cir. 2002) (rejecting argument that Florida escape conviction did not qualify as ACCA violent felony predicate), abrogated by Chambers v. United States, 555 U.S. 122; United States v. Danielson, 199 F.3d 666, 671–72 (2d Cir. 1999) (rejecting argument that New York weapons possession conviction did not qualify as ACCA violent felony). A number of these challenges were to criminal statutes similar to Connecticut's unlawful restraint law. Significantly for purposes of Harrington's ineffective assistance claim, these challenges appear to have been uniformly unsuccessful. See United States v. Wallace, 326 F.3d 881, 886–87 (7th Cir. 2003) (recognizing Illinois crime of unlawful restraint as qualifying ACCA predicate under residual clause); United States v. Zamora, 222 F.3d 756, 764–65 (10th Cir. 2000) (recognizing New Mexico crime of false imprisonment as qualifying ACCA predicate under residual clause); cf. United States v. Phelps, 17 F.3d 1334, 1342 (10th Cir. 1994) (recognizing Missouri crime of kidnapping as qualifying ACCA

12

predicate under residual clause). Thus, counsel's decision not to challenge the use of Harrington's first-degree unlawful restraint conviction as an ACCA predicate cannot be deemed objectively unreasonable in light of the law as it existed at the relevant time. See Parisi v. United States, 529 F.3d at 141.

          c.        Harrington Was Not Prejudiced by Counsel's Purported Omission Because Connecticut First-Degree Unlawful Restraint Qualifies as a Violent Felony Under the Residual Clause

In any event, we conclude that Connecticut first-degree unlawful restraint is a violent felony under the ACCA's residual clause. This conclusion not only precludes Harrington from showing that he was prejudiced by counsel's failure to argue otherwise, but also defeats his other arguments on this appeal.

As the Supreme Court has explained, the ACCA's residual clause reaches crimes that, although not enumerated, are nevertheless "typically committed by those whom one normally labels armed career criminals," i.e., crimes that show an increased likelihood that the felon in possession "is the kind of person who might deliberately point the gun and pull the trigger." Sykes v. United States, 131 S. Ct. 2267, 2275 (2011) (internal quotation marks omitted). In identifying such crimes, we apply a categorical approach, looking to the statutory definition of the crime rather than to the particular facts underlying the conviction. See id. at 2272; James v. United States, 550 U.S. at 197, 202; accord United States v. Baker, 665 F.3d 51, 54 (2d Cir. 2012). A categorical approach does not require that every conceivable commission of the crime "must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." James v. United States, 550 U.S.

13

at 208.  Rather, what is required is that the "conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another" that is "comparable to that posed by its closest analog among the enumerated [ACCA] offenses." Id. at 203, 208 (emphasis added); accord United States v. Baker, 665 F.3d at 54–55.

Applying these principles here, we conclude that Connecticut first-degree unlawful restraint categorically qualifies as a violent felony under the ACCA's residual clause. A specific element of first-degree unlawful restraint under Connecticut law is that the defendant must have intentionally restrained another person "under circumstances which expose[d] such other person to a substantial risk of physical injury."  Conn. Gen. Stat. § 53a-95(a) (emphasis added).  The highlighted language effectively tracks the language of the ACCA's residual clause, which defines any crime involving conduct that "presents a serious potential risk of physical injury to another" as a violent felony.  18 U.S.C. § 924(e)(2)(B)(ii).

Beyond this striking similarity in language, the risk element of Connecticut first-degree unlawful restraint is plainly comparable to that posed by the enumerated ACCA offense of burglary.  Burglary is deemed a violent felony "because it can end in confrontation leading to violence."  Sykes v. United States, 131 S. Ct. at 2273; see James v. United States, 550 U.S. at 200.  The same risk is present—perhaps to an even greater extent—with the ordinary case of Connecticut first-degree unlawful restraint.  Whereas burglary is a crime directed at property that may be committed even in the absence of any other person to confront, see United States v. Baker, 665 F.3d at 56, unlawful restraint necessarily targets

14

another person for the specific purpose of substantially curtailing that person's freedom of movement, see Gen. Conn. Stat. § 53a-91(1). Such conduct categorically "sets the stage for a violent confrontation between victim and assailant." United States v. Capler, 636 F.3d 321, 325 (7th Cir. 2011). Indeed, that conclusion is ineluctable in the case of first-degree unlawful restraint, which the defendant must commit under circumstances that actually expose his victim "to a substantial risk of physical injury." Conn. Gen. Stat. § 53a-95(a).

In urging otherwise, Harrington points to language in Conn. Gen. Stat. § 53a-91(1), which states that restraint "without consent" can be effected by "deception," or, in the case of a child under age 16, by "any means whatever, including acquiescence of the victim," circumstances that would not necessarily expose the victim to a risk of physical injury. We are not persuaded. While deception may allow unlawful restraint to be initiated without violence, the crime "can end in confrontation leading to violence" as soon as the victim learns that he has been tricked. Sykes v. United States, 131 S. Ct. at 2273.

We need not, however, pursue this point further because Harrington's argument fails for a more basic reason. Section 53a-91(1), on which he relies, provides a general definition of restraint, conduct which is proscribed at varying degrees of severity under Connecticut law. Thus, a person can be guilty of unlawful restraint in the second degree for any restraint of another person, even if the means employed do not put the restrained person at any risk of physical injury. See Conn. Gen. Stat. § 53a-96(a). But a person can only be guilty of unlawful restraint in the first degree if the restraint is effected, by whatever means, "under circumstances which expose such other person to a substantial risk of physical injury." Id.

15

§ 53a-95(a). In short, this language adds an element to first-degree unlawful restraint that delineates a subset of proscribed restraints that clearly and categorically qualify as violent felonies under the ACCA's residual clause.[5]

Insofar as Harrington submits that one cannot know how first-degree unlawful restraint is committed in the "ordinary case," James v. United States, 550 U.S. at 208, and therefore whether it falls within the ACCA's residual clause, without empirical data or statistical evidence, we disagree. While the Supreme Court, as well as this court, have cited statistics in discussing whether particular crimes fit within the residual clause, see, e.g., Sykes v. United States, 131 S. Ct. at 2274–75; United States v. Baker, 665 F.3d at 56–57, the Supreme Court has not required such evidence and has, in fact, stated that "statistics are not dispositive" to the residual clause inquiry, Sykes v. United States, 131 S. Ct. at 2274. In this case, the relevant statutory text, which we have already discussed, as well as case law interpreting and applying that text, permit us to conclude that, in the ordinary case, Connecticut first-degree unlawful restraint is a crime presenting as serious a potential risk of physical injury to another person as would the ordinary case of burglary.[6]

[5] Thus, restraint effected by deception would be punishable as a first-degree crime only upon proof that the victim was—perhaps without his knowledge—in fact exposed to a substantial risk of physical injury, as might be the case if the person restraining him was armed with a concealed loaded firearm.

[6] A review of all published Connecticut court decisions quoting the full text of the first-degree unlawful restraint statute indicates that, in the ordinary case, a defendant convicted of first-degree unlawful restraint uses physical force or threats of violence to commit the crime, often during the course of a robbery, domestic dispute, assault, or sexual assault. See State v. Kitchens, 299 Conn. 447, 451 (2011) (describing physical force used to restrain victim during domestic dispute); State v. Tomas D., 296 Conn. 476, 480–81

16

(2010) (describing physical force and threats used to restrain sexual assault victim), overruled on other grounds by State v. Payne, 303 Conn. 538 (2012); State v. Cutler, 293 Conn. 303, 306–07 (2009) (describing physical force used to restrain domestic violence victim); State v. Salamon, 287 Conn. 509, 515 (2008) (describing physical force used to restrain assault victim); State v. Eric M., 271 Conn. 641, 644 (2004) (describing physical force and threats used to restrain sexual assault victim); State v. Alexander, 269 Conn. 107, 110 (2004) (describing physical force used to restrain child domestic violence victim); State v. James G., 268 Conn. 382, 387 (2004) (describing physical force used repeatedly to restrain sexual assault victim); State v. Kaddah, 250 Conn. 563, 565 (1999) (describing physical force and threats used to restrain victim of attempted sexual assault); State v. Angel C., 245 Conn. 93, 99–100 (1998) (involving conviction for restraint during sexual assault); State v. Coleman, 242 Conn. 523, 528 (1997) (describing physical force and threats used to restrain sexual assault victim), rev'g in part 41 Conn. App. 255, 260–61 (1996) (same); State v. Cassidy, 236 Conn. 112, 116 (1996) (describing threats of force used to restrain victim of attempted robbery), overruled on other grounds by State v. Alexander, 254 Conn. 290 (2000); State v. Tanzella, 226 Conn. 601, 604 (1993) (describing physical force and death threats used to restrain sexual assault victim); State v. Cote, 129 Conn. App. 842, 844–46 (2011) (describing physical force used to restrain victim of domestic abuse); State v. Reeves, 118 Conn. App. 698, 701 (2010) (describing physical force used to restrain assault victim); State v. Manson, 118 Conn. App. 538, 541–42 (2009) (describing physical force used to restrain sexual assault victim); State v. Joseph, 116 Conn. App. 339, 343–45 (2009) (describing physical force and threats used to restrain victims during domestic dispute); State v. Jason B., 111 Conn. App. 359, 361 (2008) (describing physical force used to restrain sexual assault victim); State v. Pauling, 102 Conn. App. 556, 559–60 (2007) (describing physical force and threats used to restrain victim during domestic dispute); State v. Youngs, 97 Conn. App. 348, 351–52 (2006) (describing physical force used to restrain victim during domestic dispute); State v. Santana, 89 Conn. App. 553, 555 (2005) (involving conviction for restraint during robbery); State v. Cooke, 89 Conn. App. 530, 533–34 (2005) (describing threats used by gunmen to restrain robbery victims); State v. Benjamin, 86 Conn. App. 344, 346 (2004) (describing physical force used to restrain victims of attempted and completed sexual assaults); State v. Robinson, 81 Conn. App. 26, 28 (2004) (describing physical force used to restrain kidnapping victim); State v. Cotton, 77 Conn. App. 749, 753 (2003) (describing physical force used to restrain sexual assault victim); State v. White, 76 Conn. App. 509, 511 (2003) (same); State v. Nims, 70 Conn. App. 378, 381 (2002) (describing physical force used to restrain murder victim before death); State v. Walker, 67 Conn. App. 120, 121–22 (2001) (describing physical force and threats used to restrain sexual assault victim); State v. Jordan, 64 Conn. App. 143, 145 (2001) (describing physical force and threats used to restrain domestic violence victim); State v. Fuller, 58 Conn. App. 567, 571 (2000) (involving conviction for restraint of murder victim before death); State v. Johnson, 57 Conn. App.

Harrington nevertheless contends that we cannot characterize Connecticut first-degree unlawful restraint as an ACCA predicate without first considering whether that crime "typically involve[s] purposeful, violent, and aggressive conduct" as required by Begay v. United States, 553 U.S. at 144–45 (internal quotation marks omitted), and Chambers v. United States, 555 U.S. at 128. We are not persuaded.

The Supreme Court has recently cautioned against "overread[ing]" these precedents to impose an additional requirement beyond the risk analysis dictated by the statutory text. Sykes v. United States, 131 S. Ct. at 2275–76. Noting that the requirement for typically "purposeful, violent, and aggressive" conduct lacks a "precise textual link to the residual clause," the Court observed that Begay merely used the formulation to explain why a

156, 159 (2000) (describing physical force used to restrain sexual assault victim); State v. Gundel, 56 Conn. App. 805, 806–07 (2000) (involving plea after allegations of sexual assault); State v. Coleman, 52 Conn. App. 466, 467–68 (1999) (describing physical force used to restrain sexual assault victim); State v. Luster, 48 Conn. App. 872, 874 (1998) (describing physical force used to restrain assault victim); State v. Eason, 47 Conn. App. 117, 119 (1997) (describing physical force used to restrain sexual assault victim); State v. Connelly, 46 Conn. App. 486, 488–89 (1997) (describing threat with firearm used to restrain victims during domestic dispute); State v. Lake, 43 Conn. App. 715, 716–18 (1996) (describing physical force used to restrain assault and sexual assault victim); State v. Daniels, 42 Conn. App. 445, 448 (1996) (describing physical force used to restrain sexual assault victim); State v. Rose, 41 Conn. App. 701, 704–05 (1996) (describing restraint of victim by pouring gasoline on her and threatening her with matches and knife); State v. Krzywicki, 39 Conn. App. 832, 833–34 (1995) (describing physical force used to restrain sexual assault victim); State v. Elliott, 39 Conn. App. 789, 791–92 (1995) (describing physical force used by inmate to overpower guard and restrain her in cell during escape attempt); State v. Coleman, 38 Conn. App. 531, 533 (1995) (involving conviction for restraint during burglary, robbery, and sexual assault); State v. Fields, 31 Conn. App. 312, 314–15 (1993) (describing physical force used to restrain robbery victim); State v. Ulen, 31 Conn. App. 20, 22–25 (1993) (describing threats with firearm used to restrain sexual assault victim).

particular crime—driving under the influence of alcohol, which contained no mens rea requirement and was "akin to strict liability, negligence, and recklessness crimes"—failed to qualify as an ACCA predicate. Id. at 2275–76.

In Sykes, the Court clarified that in cases involving intentional criminal conduct, the focus of judicial inquiry should remain on the risk assessment specified in the ACCA's text, i.e., whether the proscribed conduct presents "a serious potential risk of physical injury to another" comparable to that posed by the enumerated offenses. 18 U.S.C. § 924(e)(2)(B)(ii); see Sykes v. United States, 131 S. Ct. at 2275; see also James v. United States, 550 U.S. at 203. The Court observed that in cases of intentional crimes, an inquiry into the "purposeful, violent, and aggressive" nature of the proscribed conduct would generally be redundant. Sykes v. United States, 131 S. Ct. at 2275 (noting that crimes that fall within "purposeful, violent, and aggressive" formulation "and those that present serious potential risks of physical injury to others tend to be one and the same"). In any event, "[a]s between the two inquiries," the Court concluded that "risk levels provide a categorical and manageable standard that suffices to resolve the case [involving an intentional crime] before us." Id. at 2275–76.[7]

---

[7] Insofar as Harrington relies on Justice Kagan's prediction in her dissenting opinion in Sykes that Begay's two-part test "will make a resurgence . . . the next time the Court considers a crime, whether intentional or not, that involves risk of injury but not aggression or violence," see Sykes v. United States, 131 S. Ct. at 2289 n.1 (Kagan, J., dissenting), it is axiomatic that Supreme Court dissents do not state controlling law, see generally Taber v. Maine, 67 F.3d 1029, 1043–44 (2d Cir. 1995). In any event, this is not the case Justice Kagan anticipates; the injury risk posed by the crime of first-degree unlawful restraint is one most likely to be achieved through aggression or violence.

19

Harrington concedes that Connecticut first-degree unlawful restraint is an intentional crime. See Conn. Gen. Stat. § 53a-91(1) (defining restraint as "intentionally and unlawfully" restricting person's movement without consent (emphasis added)); id. § 53a-95(a); State v. Kitchens, 299 Conn. 447, 450 (2011) (characterizing unlawful restraint as specific intent crime). Nevertheless, he urges that Sykes's disavowal of Begay's two-step analysis be limited to crimes akin to the one in Sykes, i.e., proscribed conduct directed at law enforcement officials who have a duty to respond with force. No such qualification is warranted. In Sykes, the Supreme Court made plain that "[i]n general, levels of risk divide crimes that qualify from those that do not"; that Begay was the only case "in which risk was not the dispositive factor" in determining the reach of the ACCA's residual clause; and that this could be explained by the fact that the crime at issue in Begay had no mens rea requirement. Sykes v. United States, 131 S. Ct. at 2275 (emphasis added). At most, this draws a distinction between intentional crimes and crimes lacking any mens rea requirement, with Begay's purposeful, violent, and aggressive formulation playing a role only in the latter context. Nothing in Sykes draws distinctions within the former category so as to signal that more than risk-level analysis is necessary there to determine whether a crime not specifically directed at a law enforcement officer may constitute a violent felony.[8] This is not to suggest

---

[8] In urging otherwise, Harrington points us to United States v. Smith, 652 F.3d 1244 (10th Cir. 2011), in which the Tenth Circuit held that assault and battery on a Juvenile Affairs employee qualified as a violent felony under the ACCA's residual clause even if assault and battery against a private person might not so qualify. See id. at 1248–49. We need not here decide whether we agree with the Tenth Circuit's observation, in dicta, about crimes of assault and battery committed against private persons. We note only that the Tenth

that the risk level attaching to certain conduct may not be informed by a statutorily specified site of the crime or occupation of the victim. See generally United States v. Johnson, 616 F.3d 85, 94 (2d Cir. 2010) (holding, before Sykes, that crime of rioting at correctional facility qualifies as violent felony under ACCA residual clause not only because of risk of confrontation posed "but also from the fact that prisons are like powder kegs, where even the slightest disturbance can have explosive consequences"). But whether or not an intentional crime includes such elements, Sykes describes the risk-level analysis as a "categorical" standard reflecting the "normative principle" chosen by Congress to guide both defendants and courts as to the crimes warranting the ACCA's enhanced punishment. Id. at 2275, 2277.

In sum, because we conclude that first-degree unlawful restraint under Connecticut law qualifies as a violent felony predicate under the ACCA's residual clause, Harrington cannot demonstrate that he was prejudiced by his counsel's failure to argue otherwise in the district court. Thus, his ineffective assistance of counsel argument fails at both steps of Strickland analysis, and his independent § 2255 challenge to the use of his restraint conviction as an ACCA predicate fails on the merits without regard to any procedural bars to review.

---

Circuit did not conclude, as Harrington urges, that Sykes's risk-level analysis applies only to crimes directed at persons somehow engaged in law enforcement. Rather, the Tenth Circuit recognized that Sykes states a categorical rule: "Where the felony at issue is 'not a strict liability, negligence, or recklessness crime' the test is not whether the crime was 'purposeful, violent, and aggressive' but whether it is 'similar in risk to the listed crimes.'" Id. at 1248 (quoting Sykes v. United States, 131 S. Ct. at 2276).

2. Failure To Challenge Sale of Narcotics as an ACCA Serious Drug Offense Predicate

Our ruling that Connecticut first-degree unlawful restraint qualifies as a violent felony predicate under the ACCA allows us to dispose quickly of Harrington's claim that counsel was constitutionally ineffective in not arguing that his Connecticut sale-of-narcotics conviction did not qualify as an ACCA predicate. With first-degree unlawful restraint qualifying as a violent felony predicate, and with Harrington abandoning any challenge to the treatment of his two Connecticut first-degree robbery convictions, see Conn. Gen. Stat. § 53a-134(a), as additional ACCA predicates, Harrington was plainly subject to a 15-year mandatory minimum sentence under 18 U.S.C. § 924(e), without regard to whether his narcotics sale conviction also qualified as an ACCA predicate. In sum, whether or not it was objectively unreasonable for Harrington's counsel not to challenge use of the narcotics conviction as an ACCA predicate, Harrington's ineffective assistance claim would necessarily fail at the second step of Strickland analysis because he could not show that he was prejudiced. Similarly, even if no procedural bar precluded Harrington from pursuing a collateral challenge to the use of his narcotics conviction as an ACCA predicate, we need not address the merits of that claim because any error was necessarily harmless in light of other predicates requiring imposition of the ACCA mandated 15-year sentence.

C. Vagueness Challenge to the Residual Clause

Finally, Harrington argues that the ACCA's residual clause is unconstitutionally vague. The claim is foreclosed from appellate review by the district court's denial of

22

Harrington's motion to amend the certificate of appealability to add such a claim. See

Armienti v. United States, 234 F.3d 820, 824 (2d Cir. 2000) (declining to address argument

not included in certificate of appealability).  In any event, we generally will not afford

appellate review to a claim that was not raised in the district court, see Singleton v. Wulff,

428 U.S. 106, 120 (1976) (reciting "general rule . . . that a federal appellate court does not

consider an issue not passed upon below"), and we identify no reason to depart from this rule

with respect to Harrington's unpreserved vagueness challenge.[9]

## III.   Conclusion

To summarize, we conclude as follows:

1.  Harrington was not denied effective assistance of counsel at sentencing because

(a) it was not objectively unreasonable for counsel not to argue that first-degree unlawful

restraint under Connecticut law, a crime that must be committed "under circumstances which

expose" the victim "to a substantial risk of physical injury," did not qualify under the residual

clause of 18 U.S.C. § 924(e)(2)(B)(ii) as a violent felony presenting a serious potential risk

of physical injury to another comparable to burglary; and (b) Harrington was not prejudiced

---

[9] While we recognize that Justice Scalia has recently urged that the ACCA's residual clause be declared void for vagueness, see Sykes v. United States, 131 S. Ct. at 2287–89 (Scalia, J., dissenting), he did so in dissent from a majority opinion which concluded that the provision was adequate to "instruct[] potential recidivists regarding the applicable sentencing regime if they again transgress," as well as to "state[] an intelligible principle and provide[] guidance that allows a person to 'conform his or her conduct to the law,'" id. at 2277 (quoting City of Chicago v. Morales, 527 U.S. 41, 58 (1999) (plurality opinion)).  Even if Harrington's vagueness argument were properly before us on this appeal, we would, of course, be bound to follow the majority opinion in Sykes rather than Justice Scalia's dissent.

23

by the purported omission because we here conclude that first-degree unlawful restraint under Connecticut law qualifies as a violent felony under the referenced residual clause.

2. To the extent Harrington challenges for the first time on collateral review the treatment of his prior first-degree unlawful restraint conviction as a violent felony under § 924(e)(2)(B)(ii), we need not decide whether he is procedurally barred from pursuing that claim because, even assuming he is not, the argument fails on the merits. Further, in light of our ruling that Connecticut first-degree unlawful restraint qualifies as a violent felony and Harrington's failure to dispute on appeal that his two prior Connecticut first-degree robbery convictions also so qualify, the district court was required to impose the challenged mandatory minimum sentence of 15 years' incarceration pursuant to § 924(e)(1), without regard to whether Harrington's sale-of-narcotics conviction also qualified as a predicate crime under § 924(e)(2)(A)(ii).

3. We decline to consider Harrington's vagueness challenge to the residual clause of § 924(e)(2)(B)(ii) because it is not included in the certificate of appealability and, in any event, was never presented to the district court as a ground for habeas relief.

For these reasons, the district court's judgment is AFFIRMED.