STATE OF CONNECTICUT *v.* RICHARD S. TAYLOR
(AC 31740)

Gruendel, Bear and Dupont, Js.

Argued September 19—officially released December 6, 2011

*Daniel J. Krisch*, special public defender, with whom was *Brendon P. Levesque*, for the appellant (defendant).

*Jennifer W. Cooper*, certified legal intern, with whom were *Harry Weller*, senior assistant state's attorney, and, on the brief, *Michael L. Regan*, state's attorney, and *Stephen M. Carney*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Richard S. Taylor, appeals from the judgment of conviction, rendered after a jury trial, of one count of cheating during gambling in violation of General Statutes § 53a-127d (a) (3), one count of conspiracy to cheat during gambling in violation of General Statutes §§ 53a-48 (a) and 53a-127d (a)

(3), one count of larceny in the first degree in violation of General Statutes (Rev. to 2007) § 53a-122 (a) (2), and one count of conspiracy to commit larceny in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-122 (a) (2).[1] On appeal, the defendant claims that the trial court's instruction to the jury on the conspiracy offenses was improper, necessitating a reversal by this court of his conviction and a remand to the trial court for a new trial. We affirm the judgment of the trial court.

The charges against the defendant relate to his purported role in conspiracies to cheat Foxwoods Casino (Foxwoods) and to commit larceny in the first degree[2] by placing late bets at craps.[3] At trial, the defendant admitted that he was aware of the conspirators' actions but claimed that he did not participate or agree to participate in the alleged conspiracies.

The jury reasonably could have found the following facts. The defendant is a professional craps player who

[1] The original and substitute informations charged the defendant, in six counts, with cheating and larceny as both principal and accessory. The principal and accessory counts subsequently were merged, and the verdict form given to the jury contained the four counts that are the subject of this appeal. We need not consider, therefore, any claimed impropriety in the instructions pertaining to the difference in the defendant's purported role as principal or accessory in the crimes charged.

[2] The defendant does not dispute that the value of the property included in the larceny charge exceeds $10,000.

[3] The game of craps is played by a group gathered around a felt craps table. One of the players, the "shooter," rolls two dice onto the craps table. The other players bet, either by placing casino chips on portions of the felt representing possible value outcomes of the dice being rolled by the shooter, or by making a verbal bet that is confirmed by the dealer, before the shooter rolls the dice. Dealers present at the craps table supervise the players' bets and dice rolls and pay out winnings.

"Late bets" are bets placed *after* the shooter has rolled the dice or after the dice have landed. A player permitted to place a late bet is afforded an unfair advantage because the element of chance is removed from the craps game. Accordingly, late bets generally are not permitted, and no payouts are made for winnings resulting from the placement of a late bet.

made his living gambling for high stakes at various casinos around the country. The defendant frequented Foxwoods beginning in 2002. He was banned from Foxwoods' premises for alleged gambling improprieties in 2003. In 2007, after a four year absence, the defendant returned to Connecticut. Upon his return, the defendant recruited former Foxwoods employees, Foxwoods craps dealers and other individuals to participate in a conspiracy to cheat at craps by placing late bets. The defendant trained individuals to play craps and to place late bets, and paid Foxwoods' dealers in exchange for information and for their participation in accepting players' late bets. The resulting sums paid to the defendant and other players cost Foxwoods tens of thousands of dollars. The defendant was prosecuted for his role in the conspiracies.

The defendant was found guilty by a jury on four counts of the charges alleged in the substitute information; see footnote 1 of this opinion; and sentenced to a total effective term of thirteen years imprisonment, execution suspended after ten years, with three years probation. This appeal followed. Additional facts will be set forth as necessary.

The defendant claims that the court's charge to the jury on the elements of conspiracy was improper. The defendant failed to object to the jury instructions at trial and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

"Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless

error analysis, the state has failed to demonstrate harm-lessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two prongs of *Golding* involve a determination of whether the claim is review-able, and the second two involve a determination of whether the defendant may prevail." (Citation omitted; internal quotation marks omitted.) *State* v. *Reeves*, 118 Conn. App. 698, 707, 985 A.2d 1068 (2010).

In the present case, the first two prongs of *Golding* are satisfied. First, the record is replete with hundreds of pages of transcripts containing the arguments and objections of counsel on various motions during trial and the court's instructions to the jury. The record is sufficient for this court to review the defendant's claim that a constitutional error deprived him of a fair trial and, if a constitutional error was committed, to deter-mine whether that error was harmless beyond a reason-able doubt. Second, the defendant's claim that the court improperly instructed the jury on an element of the offense of conspiracy is a claim "of constitutional dimension . . . ." (Internal quotation marks omitted.) *State* v. *Brown*, 259 Conn. 799, 806, 792 A.2d 86 (2002). We conclude, however, that the defendant's claim fails under the third prong of *Golding* because the court's instruction did not amount to a constitutional violation that deprived the defendant of a fair trial.

I

The defendant argues that the trial court improperly charged the jury on the elements of conspiracy. The defendant claims that the court's instruction on the element of agreement erroneously implied that the state needed to prove only that the parties "knowingly engaged" in a mutual plan to do a criminal act, thereby confusing the jury on the proof necessary to establish that element of the offense. We disagree.

The following additional facts are relevant to our disposition of the defendant's claim. The court charged the jury on the crimes of conspiracy to commit cheating and conspiracy to commit larceny in the first degree[4] immediately after delivering its charges on the respective underlying crimes. The court began by reading the statutory definition of conspiracy set forth in General Statutes § 53a-48 (a): "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

The court explained that, to find the defendant guilty of conspiracy, the state needed to prove the three separate elements of the offense beyond a reasonable doubt. It stated: "To constitute the crime of conspiracy, here, the state must prove the following essential elements beyond a reasonable doubt: (1) there was an agreement between the defendant and one or more persons to engage in conduct constituting the crime . . . (2) there was an overt act in furtherance of the subject of the agreement by any one of those persons; and (3) the defendant specifically intended to commit the crime . . . .

"The first essential element here is that the defendant, acting with the necessary intent, agreed with one or more persons to engage in or cause the performance of that conduct which constituted this crime. . . . Here, the state claims the object of the conspiracy was the crime of cheating." The court then read the statutory definition of the underlying crime.[5]

---

[4] The court's instruction to the jury on the crime of conspiracy was substantively identical in its charges on conspiracy to commit cheating and conspiracy to commit larceny in the first degree. For purposes of our analysis, we refer to the transcript of the jury charge on conspiracy to commit cheating.

[5] In its charge on conspiracy to commit cheating, the court summarized the statutory definition of cheating set forth in General Statutes § 53a-127d (a) as follows: "A person is guilty of cheating when, in the course of playing

The court undertook a lengthy explanation of the first element required to find the defendant guilty of conspiracy, namely, that there was an agreement between the defendant and one or more persons to engage in conduct constituting the underlying crimes of cheating and larceny in the first degree. The court instructed the jury on the meaning of "agreement" in this context, stating: "With respect to this first essential element that there was an agreement, it is not necessary for the state to prove there was a formal or express agreement.

"It is sufficient to show that the parties *knowingly engaged in a mutual plan to do a criminal act.* Circumstantial evidence is sufficient to prove that there was an agreement because conspiracies, by their very nature, are formed in secret and only rarely can be proven other than by circumstantial evidence. It is not necessary to establish that the defendant and the defendant's alleged co-conspirators signed papers, shook hands, or uttered the words 'we have an agreement,' but rather, a conspiracy may be inferred from the conduct of the accused.

*"The mere knowledge, acquiescence or approval of the object of the agreement without cooperation or agreement to cooperate, however, is not sufficient to make one a party to a conspiracy to commit the criminal act.*

any lawful gambling game, he intentionally places a winning wager after that period of time during which the rules of a lawfully operated game of chance permit a wager to be placed or after the results of the game in which the wager has been placed become known."

In its charge on conspiracy to commit larceny in the first degree, the court summarized the statutory definition of larceny in the first degree set forth in § 53a-122 (a) (2) as follows: "A person is guilty of larceny in the first degree when he commits larceny and the value of the property exceeds ten thousand dollars."

"In order to convict a person of conspiracy, the state need not show that such person had direct communication with all other conspirators. It is not necessary that each conspirator be acquainted with all others or even know their names.

"It is sufficient that if the defendant has come to an understanding with at least one of the others and has come to such understanding with that person to further a criminal purpose. It is not essential that he know the complete plan of the conspiracy in all of its details. It is enough if he knows that a conspiracy exists or that he is creating one and that he is joining with at least one person in an agreement to commit a crime.

"Therefore, in order to convict the defendant of this charge here [conspiracy], the first essential element that the state must prove beyond a reasonable doubt is that the defendant entered into an agreement with at least one other person to engage in conduct constituting cheating.

"The defendant must have had a guilty intent and knew that what he was doing was part of a scheme to commit cheating as alleged.

"Such an agreement may be proven by direct evidence, that is, by testimony of one of the conspirators about the agreement. Or it may also be shown by circumstantial evidence.

"Thus, *a conspiracy may be proven by showing a sequence or combination of acts of such nature that they tend to show a mutual purpose.* In a conspiracy, it may be that one act, taken by itself, may not tend to show an unlawful agreement. But when it is looked at in connection with other acts, the totality of the acts may be sufficient to show the unlawful agreement.

"Thus, an unlawful agreement may be proven by proof of separate acts by members of the conspiracy,

and by proof of their surrounding circumstances, from which you may infer the existence of an illegal agreement." (Emphasis added.)

Following its instruction on the element of agreement, the court instructed the jury on the second and third elements of conspiracy. In its discussion of the third element, that of specific intent, the court explained the difference between intent to *enter into an agreement* with one or more other persons to commit the underlying crime, and intent to *commit the underlying crime.* The court stated: "The third essential element here is that the defendant had the intent to commit cheating. The defendant cannot be found guilty here unless the state has proven beyond a reasonable doubt that he intended to commit cheating when he allegedly entered into the agreement."[6] "The defendant must have been actuated by criminal intent, that is, that he intended that certain conduct which, if performed, would constitute that crime [of conspiracy] to be performed or to take place. Again, intent relates to the condition of the mind of the person who commits the act, his purpose in doing it. As defined by our statute, a person acts intentionally with respect to a result when his conscious objective is to cause such result. Intentional conduct is purposeful conduct rather than conduct that is accidental or inadvertent."

The court emphasized further: "Conspiracy is a specific intent crime with the intent divided into two elements: (a) the intent to *agree to conspire*; and (b) the intent to commit the offense which is the object of the conspiracy, here, cheating . . . ." (Emphasis added.)

---

[6] The corresponding instruction for the charge of conspiracy to commit larceny provided: "The third essential element here is that the defendant had the intent to commit larceny in the first degree. The defendant cannot be found guilty here unless the state has proven beyond a reasonable doubt that he intended to commit larceny in the first degree when he allegedly entered into the agreement."

Thereafter, the jury found the defendant guilty of cheating during gambling, conspiracy to cheat during gambling, larceny in the first degree and conspiracy to commit larceny in the first degree.

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation . . . but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Flores*, 301 Conn. 77, 93, 17 A.3d 1025 (2011).

"To establish the crime of conspiracy under § 53a-48 of the General Statutes, the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed. The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they

are knowingly engaged in a mutual plan to do a forbidden act.'"[7] (Internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 181–82, 869 A.2d 192 (2005); see also *State* v. *Millan*, 290 Conn. 816, 825–26, 966 A.2d 699 (2009); *State* v. *Martin*, 285 Conn. 135, 149, 939 A.2d 524, cert. denied, 555 U.S. 859, 129 S. Ct. 133, 172 L. Ed. 2d 101 (2008).

On the basis of our review of the court's entire charge, we conclude that it is not reasonably possible that the jury was misled. The court properly stated the law on conspiracy, including the element of agreement, in accordance with controlling Supreme Court precedent. With respect to the element of agreement, the jury was instructed properly that, to find the defendant guilty of conspiracy, they needed to find that he intentionally agreed with one or more persons to engage in conduct constituting the underlying crimes of cheating and larceny in the first degree.[8] Viewing the court's instructions as a whole, it is not reasonably possible that the jury could have been led to believe that the defendant's mere knowledge of the conspiracies was sufficient to satisfy the element of agreement. Accordingly, the defendant was not deprived of his due process right to have the state prove each element of the offenses charged beyond a reasonable doubt. The court's instruction to the jury did not amount to a constitutional violation that deprived the defendant of a fair trial, and the defendant's claim therefore fails under the third prong of *Golding*. See *State* v. *Reeves*, supra, 118 Conn. App. 707.

---

[7] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[8] We note further that the court's instruction to the jury on the crime of conspiracy was in accord with Connecticut's model jury instructions. See Connecticut Criminal Jury Instructions (4th Ed. 2007) § 3.3, available on the Connecticut Judicial Branch website, http://www.jud.ct.gov/ji/criminal/part3/3.3-1.htm. The model instructions contain, verbatim, the words contested by the defendant, namely: "It is sufficient to show that the parties

## II

Entwined in the defendant's claim that the court's instruction to the jury was improper is an additional, underlying argument. The defendant acknowledges that the jury instruction at issue is "in keeping with decades of Supreme Court precedent," but argues that the instruction was erroneous because Supreme Court precedent "misstates the law" as originally established by that court.

The defendant claims that the court's charge to the jury was the result of "decades of mis-citation," beginning with *State* v. *Holmes*, 160 Conn. 140, 149, 274 A.2d 153 (1970). The defendant argues that, in *Holmes*, the Supreme Court erroneously omitted the phrase "mutual purpose"—used in the earlier cases of *State* v. *Kemp*, 126 Conn. 60, 79, 9 A.2d 63 (1939), and *State* v. *Rich*, 129 Conn. 537, 540, 29 A.2d 771 (1942)—from its discussion of the first element of conspiracy, that of agreement. The crux of the defendant's argument is that the words "mutual purpose to do the forbidden act"; (internal quotation marks omitted) *State* v. *Kemp*, supra, 79; were representative of the requirement that the alleged conspirator intentionally *enter into an agreement* to commit the underlying crime, and that, of late, this requirement has been converted into a concept of "knowing engagement." See, e.g., *State* v. *Padua*, supra, 273 Conn. 181–82 ("[t]he existence of a formal agreement between the parties need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act" [internal quotation marks omitted]). The defendant argues that *Holmes* and the entire line of Supreme Court cases after *Holmes* therefore represent a "serious error" that is in need of correction.[9]

*knowingly engaged* in a mutual plan to do a criminal act." (Emphasis added.) Id., § 3.3-1.

[9] In his reply brief, the defendant encourages this court to "ameliorate the serious error—conflating knowing engagement with mutual purpose—

The defendant's argument seeks our involvement into the realm of the rectitude of Supreme Court precedent. As an intermediate appellate court, it is axiomatic that we are bound by the latest precedent of our Supreme Court and cannot reconsider its decisions. See *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 121 Conn. App. 31, 48–49, 994 A.2d 262, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010); *State* v. *Brown*, 73 Conn. App. 751, 756, 809 A.2d 546 (2002). We decline the defendant's invitation because we are not at liberty to discard, modify or reevaluate the decisions he challenges.[10] *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 48–49. We are bound by the Supreme Court's latest pronouncements, and we conclude that the trial court instructed the jury on the charges of conspiracy to commit cheating and conspiracy to commit larceny in the first degree in accordance with contemporary, controlling Supreme Court precedent. See, e.g., *State* v. *Padua*, supra, 273 Conn. 181–82.

The defendant did not prove that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. He, therefore, cannot prevail under the precepts of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

that has wormed its way into the standard Connecticut conspiracy charge that was given by the trial court" and invites us to "take the opportunity presented by this appeal to correct that error." We note that this argument belies the defendant's claim to this court, made during oral argument, that he is not attempting to have us overrule the Supreme Court.

[10] In the event that the Connecticut Supreme Court agrees with the defendant and concludes that it has strayed from *State* v. *Kemp*, supra, 126 Conn. 60, it is not this court, given our role in the appeal hierarchy, but the defendant, who should attempt to convince the Supreme Court of its alleged error. We note that, while this appeal was pending, the defendant sought transfer to the Supreme Court and that the Supreme Court denied his motion.