******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* WINSTON
LEEBERT GRANT
(AC 35982)

Beach, Bear and West, Js.

*Argued November 19, 2013—officially released March 25, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Hauser, J.)

*Richard W. Callahan*, assigned counsel, for the appellant (defendant).

*Adam E. Mattei*, deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Joseph T. Corradino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Winston Leebert Grant, appeals from the judgment of conviction rendered after a jury trial of one count of conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a), and one count of murder, both as an accessory in violation of General Statutes §§ 53a-8 and 53a-54a (a), and as a coconspirator pursuant to the *Pinkerton*[1] doctrine. On appeal, the defendant claims that (1) there was insufficient evidence to support the jury's verdict for the charges of conspiracy to commit murder and murder as an accessory; (2) the court improperly instructed the jury on the charge of conspiracy to commit murder; and (3) the court abused its discretion when it denied his motion for a mistrial predicated on jury misconduct. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, Maurice Johnson, was a drug dealer who sold marijuana. On the evening of January 31, 2008, the victim was with his girlfriend, Michelle Rose, at his apartment in Bridgeport when he received a cell phone call regarding a drug deal with the defendant. At approximately 10 p.m., Rose accompanied the victim to the Legend's Social Club in Bridgeport, where the victim intended to sell marijuana to the defendant.

When he arrived in the club parking lot, the victim handed the defendant a bag of marijuana and drove away without being paid. Later that evening, after receiving a telephone call from the defendant, the victim and Rose returned to the club parking lot to accept payment. The defendant backed into a parking space adjacent to the front passenger's side of the victim's truck, where Rose was seated. Rose informed the victim that the defendant was beckoning him to the defendant's car. The victim entered the passenger's seat of the defendant's car, whereupon Rose saw a dark figure rise up from the defendant's backseat and grab the victim around his neck. The hidden assailant was holding a gun next to the victim's neck. During the attack, the defendant was staring at Rose and rocking back and forth in effort to obscure her view of the victim. Rose could see the victim struggling, and when she heard him scream, she got into the driver's seat of the victim's truck and drove off to get help. She found a police officer a few streets away and informed him that the victim was being strangled in the club parking lot. The officer reported the incident to dispatch at 11:33 p.m.

When the police arrived at the club parking lot at 11:36 p.m., they found the victim lying in a pool of blood with a gunshot wound to his right eye and another gunshot wound to his right cheek. Two emergency medical technicians arrived on the scene and determined

that the victim was dead. Rose gave a statement to the police, and a warrant was issued for the defendant's arrest. The defendant was arrested in New York on February 5, 2008. He told the arresting officer that he went to New York because he heard that the police were looking for him in connection with the victim's murder. Following his arrest, Rose identified the defendant in a police photographic array.

The defendant was charged by way of a substitute information with one count of conspiracy to commit murder and one count of murder. The jury found the defendant guilty of conspiracy to commit murder, and of murder as an accessory and as a coconspirator pursuant to the *Pinkerton* doctrine. The court accepted the verdict and sentenced the defendant to twenty years incarceration for conspiracy to commit murder and forty-five years incarceration for murder. The court further ordered that the sentences run concurrently, for a total effective sentence of forty-five years incarceration. This appeal followed. Additional facts will be set forth as they pertain to each claim.

I

The defendant first claims that there was insufficient evidence to support the jury's verdict on the charges of conspiracy to commit murder and murder as an accessory. We disagree.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . .

"Additionally, the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Finally, [t]he trier of fact may credit part of a witness' testimony and reject other parts. . . . [W]e must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor

and attitude . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown*, 299 Conn. 640, 646–48, 11 A.3d 663 (2011).

A

First, we determine whether the jury's guilty verdict on the charge of conspiracy to commit murder was supported by sufficient evidence. We conclude that the evidence was sufficient to support a finding beyond a reasonable doubt that the defendant was guilty of conspiracy to commit murder in violation of §§ 53a-48 and 53a-54a (a).

"To establish the crime of conspiracy [to commit murder, the state must show] that an agreement was made between two or more persons to engage in conduct constituting [the crime of murder] and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. . . . While the state must prove an agreement [to commit murder], the existence of a formal agreement between the conspirators need not be proved because [i]t is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. . . . [T]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts. . . . Further, [c]onspiracy can seldom be proved by direct evidence. It may be inferred from the activities of the accused persons." (Citation omitted; internal quotation marks omitted.) *State* v. *Green*, 62 Conn. App. 217, 223–24, 774 A.2d 157 (2001), aff'd, 261 Conn. 653, 804 A.2d 810 (2002); see also *State* v. *Perez*, 147 Conn. App. 53, 80–81, 80 A.3d 103 (2013).

Viewing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have found by inference that the defendant committed the crime of conspiracy to commit murder. The evidence demonstrates that he transported the hidden, gun-wielding assailant to a scheduled meeting with the victim and beckoned the victim into the car where the assailant lay in wait. This evidence of luring the victim to an armed ambush was sufficient to establish that the defendant agreed to cause the death of the victim and that he took an overt act in furtherance thereof. See *State* v. *Rosado*, 134 Conn. App. 505, 511–12, 39 A.3d 1156 (evidence that defendant planned victim's murder and acted as lookout while he watched murder occur was sufficient to support conviction of conspiracy to commit murder), cert. denied, 305 Conn. 905, 44 A.3d 181 (2012); *State* v. *Lopez*, 52 Conn. App. 176, 186, 726 A.2d 620 (luring victim into building where assault took place constitutes overt act in furtherance of conspiracy), cert. denied, 248 Conn. 917, 734 A.2d

568 (1999).

Additionally, the state presented evidence that, when the assailant began to strangle the victim, the defendant stared at Rose and moved from side to side in an effort to obscure her view. The defendant's failure to intervene to assist the victim during the assault further supports the jury's finding of conspiracy to commit murder. See *State* v. *Rosado*, supra, 134 Conn. App. 511 ("conspiracy . . . may be inferred from [the defendant's] presence at critical stages of the conspiracy that could not be explained by happenstance" [internal quotation marks omitted]).

Accordingly, we conclude that there was sufficient evidence to support the jury's finding beyond a reasonable doubt that the defendant was guilty of conspiracy to commit murder in violation of §§ 53a-48 and 53a-54a (a).

B

We next consider the defendant's claim that there was insufficient evidence to support his conviction of the crime of murder as an accessory. We do not agree.

"The statutory provision governing accessory liability, General Statutes § 53a-8, provides in relevant part that [a] person, acting with the mental state required for the commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct . . . as if he were the principal offender. We have previously stated that a conviction under § 53a-8 requires [the state to prove the defendant's] dual intent . . . [first] that the accessory have the intent to aid the principal and [second] that in so aiding he intend to commit the offense with which he is charged. . . .

"Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . [B]ecause intent to cause the death of a person is an element of the crime . . . that intent must be proven beyond a reasonable doubt. . . . Furthermore, [i]ntent to cause death may be inferred from the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death. . . . Thus, to convict the defendant of murder as an accessory, the jury had to conclude that the defendant had the intent to aid [the principal] in the crime and that he had the intent to commit the crime itself." (Citations omitted; internal quotation marks omitted.) *State* v. *Green*, supra, 62 Conn. App. 225–26.

There is a plethora of evidence from which the jury reasonably could have inferred the defendant's intent

to murder the victim. First, the evidence cited in part I A of this opinion with respect to the defendant's conviction of conspiracy to commit murder supports the jury's determination that the defendant *intended to aid the principal* in murdering the victim. Namely, the defendant transported an armed assailant to his meeting with the victim, lured the victim into his car, and failed to intervene when the assailant began to strangle the victim while holding a gun to his neck. See *State* v. *Grant*, 219 Conn. 596, 603–604, 594 A.2d 459 (1991) (evidence that defendant helped transport two assailants to crime scene and remained calm after murder of victim was sufficient to support jury's inference that defendant intended to murder victim). Second, the evidence in this case also supports the jury's determination that the defendant *intended to murder the victim*, in light of the axiom that an individual intends the natural consequences of his or her voluntary conduct. See *State* v. *Montanez*, 219 Conn. 16, 20, 592 A.2d 149 (1991). Here, the jury reasonably could have concluded that the defendant intended to kill the victim because death is a natural consequence of luring an individual into an armed ambush.

Furthermore, the jury reasonably could have inferred the defendant's intent to commit murder from evidence of the defendant's consciousness of guilt. The defendant admitted that he fled to New York when he learned that the police were looking for him in connection with the victim's murder. "[F]light, when unexplained, tends to prove a consciousness of guilt . . . ." *State* v. *Scott*, 270 Conn. 92, 104–105, 851 A.2d 291 (2004), cert. denied, 544 U.S. 987, 125 S. Ct. 1861, 161 L. Ed. 2d 746 (2005). In turn, "consciousness of guilt evidence [is] part of the evidence from which a jury may draw an inference of an intent to kill." (Internal quotation marks omitted.) *State* v. *Otto*, 305 Conn. 51, 73, 43 A.3d 629 (2012).

Therefore, we conclude that there was sufficient evidence supporting a finding beyond a reasonable doubt that the defendant was guilty of murder as an accessory in violation of §§ 53a-8 and 53a-54a (a).

II

Next, the defendant claims that he is entitled to a new trial because the court improperly instructed the jury on the "agreement" element of the charge of conspiracy to commit murder, thereby violating his constitutional right to a fair trial. In particular, he argues that the court's isolated instruction that "[i]t is sufficient to show that the parties *knowingly engaged* in a mutual plan to do a criminal act"; (emphasis added); improperly led the jury to believe that evidence of the defendant's *mere knowledge* that he was participating in a plan to commit a crime satisfies the agreement element of conspiracy, rather than evidence of the defendant's *specific intent* to commit murder and to participate in an agreement in furtherance thereof. We are not per-

suaded.

As a threshold matter, the defendant concedes that he failed to preserve this claim on appeal, but nevertheless seeks reversal pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2] Because the record is adequate and the claim is of constitutional magnitude, we will afford it review.[3]

The following additional facts and procedural history are relevant to our disposition of this claim. Prior to charging the jury on the crimes set forth in the information, the court instructed it on the concept of specific intent, stating: "A person acts intentionally with respect to a result when his conscious objective is to cause such result. This definition is used with specific intent crimes. With a specific intent crime, the state must prove beyond a reasonable doubt that the defendant intended the result."

Thereafter, the court read aloud the statutory definition of conspiracy[4] and further stated that "[t]o constitute the crime of conspiracy, the state must prove the following elements beyond a reasonable doubt: One, *that there was an agreement between the defendant and one or more persons to engage in conduct constituting the crime of murder.* Two, that there was an overt act in furtherance of the subject of the agreement by any one of those persons. And, three, *the defendant specifically intended to commit the crime of murder. . . . The state must prove beyond a reasonable doubt that the defendant caused the death of the victim with a specific intent to cause the death.*" (Emphasis added.)

Subsequently, the court instructed the jury on the agreement element of the conspiracy charge, stating, in pertinent part, that "[*i*]*t is sufficient to show that the parties knowingly engaged in a mutual plan to do a criminal act. . . . The mere knowledge, acquiescence, or approval of the object of the agreement without cooperation or agreement to cooperate, however, is not sufficient to make someone a party to a conspiracy to commit a criminal act. Mere presence at the scene of a crime, even when coupled with knowledge of the crime, is insufficient to establish [guilt] of the conspiracy to commit the crime.*" (Emphasis added.)

In instructing the jury on the third element of conspiracy, the court once again referred the jury to its earlier instruction on specific intent and stated: "The defendant may not be found guilty unless the state has proved beyond a reasonable doubt that he *specifically intended to commit the crime of murder when he entered into the agreement.*"[5] (Emphasis added.) The jury ultimately found the defendant guilty of the crimes charged.

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation

. . . but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . .

"To establish the crime of conspiracy under § 53a-48 of the General Statutes, the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed. The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act." (Citation omitted; internal quotation marks omitted.) *State* v. *Taylor*, 132 Conn. App. 357, 366–67, 31 A.3d 872 (2011), appeal dismissed, 309 Conn. 83, 71 A.3d 464 (2013).

On the basis of our review of the court's entire charge to the jury, we conclude that there is no reasonable possibility that the jury was misled with respect to the "agreement" element of the crime of conspiracy. Our analysis is controlled by this court's decision in *State* v. *Taylor*, supra, 132 Conn. App. 357. Like the trial court in *Taylor*, the court in the present case repeatedly articulated that, in order to be found guilty of conspiring to commit murder, the jury must find that the defendant *specifically intended* both to enter into an agreement to commit murder and to commit the agreed upon murder. Additionally, the defendant's contention that the jury reasonably could have believed that mere *knowing participation* in a plan to commit an unlawful act was sufficient to satisfy the agreement element of conspiracy is undermined by the court's express instruction that "[t]he mere knowledge . . . of the object of the agreement without cooperation or agreement to cooperate . . . is not sufficient to make someone a party to a conspiracy to commit a criminal act. Mere presence at the scene of a crime, even when coupled with knowledge of the crime, is insufficient to establish [guilt] of the conspiracy to commit the crime."

Moreover, as in *Taylor*, the defendant in the present case concedes that the contested jury charge was consistent with our Supreme Court precedent, but nevertheless contends that "the decades of [our] Supreme

Court precedent itself misstates the law."[6] "The defendant's argument seeks our involvement into the realm of the rectitude of Supreme Court precedent. As an intermediate appellate court, it is axiomatic that we are bound by the latest precedent of our Supreme Court and cannot reconsider its decisions. . . . We decline the defendant's invitation because we are not at liberty to discard, modify or reevaluate the decisions he challenges." (Citations omitted.) *State* v. *Taylor*, supra, 132 Conn. App. 369. Our Supreme Court, which is empowered to revise precedent on this issue, declined to do so when it determined that *Taylor* was improvidently granted certiorari, and therefore dismissed the defendant's appeal. See *State* v. *Taylor*, 309 Conn. 83, 71 A.3d 464 (2013). We thus conclude that the court properly instructed the jury on the "agreement" element of the charge of conspiracy to commit murder. Consequently, the defendant failed to establish a clear constitutional violation pursuant to the third prong of *Golding*.

### III

Finally, the defendant claims that he is entitled to a new trial because the court improperly denied his motion for a mistrial, predicated on jury misconduct. Specifically, he contends that "[t]he trial court erred by not inquiring of each juror as to the effect of the juror misconduct on their ability to remain impartial and by denying the defendant's motion for a mistrial for jury misconduct." We disagree.

The following additional procedural history is relevant to our resolution of this claim. After the jury commenced its deliberations, the foreperson submitted a note to the court stating that one of the jurors, S, had a potential conflict of interest with respect to a "personal relationship." S also submitted a note to the court specifically inquiring as to whether the defendant was being held at a certain correctional center where her husband was employed. She expressed concern for her husband's safety, in the event that the defendant was being held there and discovered that her husband was married to a juror on his case. Consequently, the court held an in-chambers conference with S and all counsel to determine whether she would be able to render an impartial verdict. S stated that she did not know whether the defendant was incarcerated at the specified correctional center, or whether he was incarcerated at all. She further stated that the other jurors saw the note that she submitted to the court and knew that her husband was employed at the specified correctional center. Counsel for both the state and the defendant questioned S regarding the nature of her concerns, and the court ultimately concluded that she would not be able to render an impartial verdict. Accordingly, it decided to excuse her from the jury and to replace her with an alternate juror.

Thereafter, the court contemplated whether it should

question individually the remaining eleven jurors to determine whether S's concerns affected their impartiality. The state expressed concern that such individual questioning might reinforce the issue of whether the defendant was incarcerated, thereby causing the jury to speculate impermissibly as to matters not in evidence. Instead, the state suggested that the court deliver a curative instruction admonishing the jurors not to infer from its decision to excuse S that the defendant was being held at the specified correctional center, or that he was incarcerated at all. The defendant agreed that individually questioning the jurors might reinforce the issue of whether the defendant was incarcerated, and further stated that such an inquiry would give "each juror that individual opportunity to say the magic words and get out of here if they . . . want to." With the agreement of both parties, the court recessed to draft a curative instruction.

When the court reconvened, it excused S. Thereafter, the defendant moved for a mistrial, claiming that the jury was poisoned by S's inquiries as to whether he was incarcerated and, therefore, the jury no longer presumed that he was innocent.[7] The state opposed the defendant's motion and instead moved for the court to seat an alternate juror and to issue a curative instruction. The court denied the defendant's motion for a mistrial and granted the state's motion. After selecting an alternate juror, the court delivered to the jury a curative instruction. After the jury was excused to deliberate, the defendant took exception to the court's denial of his motion for a mistrial.

We decline to review the defendant's claim because he induced the purported error. "This court routinely has held that it will not afford review of claims of error when they have been induced. [T]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional and induced constitutional error. . . . The invited error doctrine rests [on principles] of fairness, both to the trial court and to the opposing party." (Internal quotation marks omitted.) *Dept. of Transportation* v. *White Oak Corp.*, 141 Conn. App. 738, 765 n.17, 62 A.3d 599, cert. granted on other grounds, 309 Conn. 910, 69 A.3d 307 (2013). The defendant induced the claimed error when he *agreed* to the curative instruction and, more specifically, when he *agreed* with the prosecutor that individual questioning of the remaining jurors could, in fact, harm the defendant's right to an impartial jury, and further, that it could encourage some of them to feign bias in order to be excused from the jury.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "In *Pinkerton* v. *United States*, 328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946), the United States Supreme Court held that a conspirator may be held liable for criminal offenses committed by a coconspirator that are within the scope of the conspiracy, are in furtherance of it, and are reasonably foreseeable as a necessary or natural consequence of the conspiracy." (Internal quotation marks omitted.) *State* v. *Martinez*, 278 Conn. 598, 604 n.14, 900 A.2d 485 (2006).

[2] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

[3] The state contends that this claim is not reviewable because the defendant waived it. See *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011). Because the record does not disclose whether the court provided counsel with a meaningful opportunity to review the proposed jury instructions, we decline to address the state's waiver claim.

[4] "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." General Statutes § 53a-48 (a).

[5] The court summarized its instructions on the crime of conspiracy to commit murder, stating, "the state must prove beyond a reasonable doubt that, one, *the defendant had an agreement with one or more persons to commit the crime of murder*; two, that at least one of the coconspirators did an overt act in furtherance of the conspiracy; and, three, *the defendant specifically intended to cause the death of* [*the victim*]." (Emphasis added.)

[6] As this court noted in *Taylor* with respect to that defendant's analogous claim, "the court's instruction to the jury on the crime of conspiracy was in accord with Connecticut's model jury instructions. See Connecticut Criminal Jury Instructions (4th Ed. 2007) § 3.3, available on the Connecticut Judicial Branch website, http://www.jud.ct.gov/ji/criminal/part3/3.3-1.htm. The model instructions contain, verbatim, the words contested by the defendant, namely: 'It is sufficient to show that the parties *knowingly engaged* in a mutual plan to do a criminal act.' " (Emphasis in original.) *State* v. *Taylor*, supra, 132 Conn. App. 367–68 n.8.

[7] In moving for a mistrial, the defendant did not inform the court that he had changed his position with respect to questioning the jurors individually.