******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* STEPHEN
M. SABATO
(AC 35524)

DiPentima, C. J., and Keller and West, Js.

*Argued March 4—officially released September 2, 2014*

(Appeal from Superior Court, judicial district of
Danbury, geographical area number three, Pavia, J.)

*Glenn W. Falk*, assigned counsel, with whom, on the
brief, was *Deborah M. Frankel*, legal fellow, for the
appellant (defendant).

*Jacob L. McChesney*, special deputy assistant state's
attorney, with whom, on the brief, were *Stephen J.
Sedensky III*, state's attorney, and *Sean P. McGuinness*,
assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Stephen M. Sabato, appeals from the judgment of conviction, rendered after a jury trial, of attempt to interfere with an officer in violation of General Statutes §§ 53a-49 and 53a-167a (a) (2), and intimidating a witness in violation of General Statutes § 53a-151a (a) (1). On appeal, the defendant claims that there was insufficient evidence to convict him of (1) attempt to interfere with an officer because (A) § 53a-167a does not apply to physical or verbal conduct directed against a third party and (B) applying § 53a-167a to conduct with a possible indirect effect upon a police investigation would render the statute void for vagueness; and (2) intimidating a witness. We reverse in part and affirm in part the judgment of the trial court.

The jury reasonably could have found the following facts. On November 4, 2011, Jazmyn Lopez-Gay, accompanied by the defendant and other friends, visited a nightclub in Danbury. While at the nightclub, her cell phone was stolen. The following day, she used an application on her computer to track the cell phone's location that indicated that it was near the Danbury mall. She then called the Danbury police who went to look for the cell phone, but were unable to find it.

That same day, November 5, 2011, the defendant called Ian Mason, an acquaintance, and asked him to pick him up and drive him to the Danbury mall. During that trip, the defendant sold Mason the cell phone. Because the cell phone was password protected, Mason was unable to access its functions or its contents. Seeking to gain access, Mason contacted Michael Barbour, a friend who used to perform work servicing cell phones, and brought the cell phone to his home in Newtown.

Meanwhile, occurring parallel to these events, Lopez-Gay again used the tracking application on her computer, which indicated that her cell phone was located at Barbour's home in Newtown. Lopez-Gay then called the Newtown Police Department who sent police officer Michael McGowan to that location. Once there, McGowan spoke with Mason, who relinquished the cell phone.

Later that night, Mason went to the Newtown Police Department. He was questioned by a police officer and eventually provided a sworn, written statement recounting how he came to possess the cell phone. Around this time, Mason sent a text message to the defendant telling him that he was at the police station. In response, the defendant sent a text message to Mason telling him not to write a statement and to "keep [his] mouth shut." The message scared Mason and caused him to hesitate before making his statement.

At some point, the defendant discovered that Mason

had made a statement to the police. On November 12, 2011, the defendant sent Mason a series of threatening Facebook messages.[1] The messages shared similar content. In one message the defendant wrote: "U wrote a statement regardless. Hearsay is nothing they can't arrest u unless they have a statement and that's what u did u wrote a fucking statement. . . . I thought we were straight and u wouldn't be dumb enough to write a statement after telling u that day what we did to the last snitch. Ur a snitch kid that's what it comes down to and ur gonna get treated like a snitch u wrote that statement u best be ready for the shit u got urself into. U think it's a fuckin game and all this is fine and were gonna be cool cause u got scared when the cops pressed u and u folded like every other snitch when they had NOTHING on either of us. U fucked up I'd watch out if I were u my boys are real pissed at u for this knowing I'm already in enough shit a's it is. Don't worry about me worry about them period."

The defendant was charged with larceny in the fifth degree, attempt to interfere with an officer, and intimidating a witness. The jury found him guilty on the attempt to interfere with an officer charge and the intimidating a witness charge. The court declared a mistrial on the larceny charge. The court then rendered judgment in accordance with the verdict and sentenced the defendant to one year incarceration on the interference charge, and to a term of six years incarceration, execution suspended after three years, with a five year period of probation on the intimidation charge. The sentences were to be served consecutively for a total effective sentence of seven years incarceration, suspended after four years, with five years of probation.[2] This appeal followed.

We begin by setting forth the standard of review for the two claims raised on appeal. "In reviewing a sufficiency of the evidence claim, we construe the evidence in the light most favorable to sustaining the verdict, and then determine whether from the facts so construed and the inferences reasonably drawn therefrom, the trier of fact reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Lewis*, 148 Conn. App. 511, 514, 84 A.3d 1238, cert. denied, 311 Conn. 940, 89 A.3d 349 (2014). When, however, a claim of insufficient evidence turns on the appropriate interpretation of a statute, our review is plenary. See *State* v. *Webster*, 308 Conn. 43, 51, 60 A.3d 259 (2013).

I

The defendant claims that there was insufficient evidence to convict him of attempt to interfere with an officer for two reasons. First, he argues that § 53a-167a does not proscribe physical or verbal conduct directed against a third party, and thus in this case, there was insufficient evidence to establish his guilt because his conduct was directed against Mason, and not a specific, identifiable police officer. Second, he contends that applying § 53a-167a to his conduct, which was outside the presence of a police officer, would render the statute void for vagueness. We agree that there was insufficient evidence to support his conviction, but for different reasons.[3]

Our Supreme Court's decision in *State* v. *Williams*, 205 Conn. 456, 534 A.2d 230 (1987) resolves this claim. In *Williams*, the defendant had matched a description of a burglary suspect and had been stopped and detained by the police. Id., 467. While detained, he made loud protestations to the point of attracting onlookers, which led to his arrest for breach of the peace. Id., 468. Upon being informed of his arrest, the defendant again reacted and had to be forcibly subdued. Id. He was charged and later convicted of interfering with an officer in violation of § 53a-167a.[4] Id., 459. On appeal, the defendant challenged the constitutionality of that statute on two grounds. Id. In the first instance, he raised a vagueness challenge to the statute, which the court rejected. Id., 469–72. The defendant further claimed that the statute was fatally overbroad. Id., 472.

Contrasting § 53a-167a with another state's interfering with an officer statute that had been struck down on overbreadth grounds in *Houston* v. *Hill*, 482 U.S. 451, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987), the court concluded that § 53a-167a was not impermissibly overbroad. Id., 472–73. The court reasoned that the statute had not been applied "to conduct arguably falling within the protection afforded by the first amendment to the United States constitution or article first, § 5, of the Connecticut constitution." *State* v. *Williams*, supra, 205 Conn. 473. The court cautioned, however, that "[t]o avoid the risk of constitutional infirmity, we construe § 53a-167a to proscribe *only physical conduct and fighting words* that by their very utterance inflict injury or tend to incite an immediate breach of the peace." (Emphasis added; internal quotation marks omitted.) Id.

Applying *Williams* to the present case, we conclude that there was insufficient evidence to convict the defendant of attempt to interfere with an officer. By long form information, the defendant was charged under § 53a-167a exclusively for a text message he sent to Mason on November 5, 2011, telling him not to write a statement and to "keep [his] mouth shut." These words cannot be construed to be "fighting words that by their very utterance inflict injury or tend to incite an immedi-

ate breach of the peace." *State* v. *Williams*, supra, 205 Conn. 473. They were therefore not proscribed by § 53a-167a. As a result, we conclude that there was insufficient evidence presented to sustain the defendant's conviction for attempt to interfere with an officer.

## II

The defendant next claims that there was insufficient evidence to convict him of intimidating a witness. Specifically, he argues that the conduct underlying his charge—the Facebook messages sent to Mason—did not constitute proof beyond a reasonable doubt that he intended to influence, delay or prevent Mason from testifying in an official proceeding within the meaning of § 53a-151a. We disagree.

Section 53a-151a provides in relevant part: "A person is guilty of intimidating a witness when, believing that an official proceeding is pending or about to be instituted, such person uses, attempts to use or threatens the use of physical force against a witness or another person with intent to (1) influence, delay or prevent the testimony of the witness in the official proceeding . . . ." General Statutes § 53a-146 (1) defines "official proceeding" in relevant part as "any proceeding held or which may be held before any legislative, judicial, administrative or other agency or official authorized to take evidence under oath . . . ." Section 53a-146 (6) defines "witness" as "any person summoned, or who may be summoned, to give testimony in an official proceeding."

Recently, our Supreme Court, interpreting a similar statute, clarified the meaning of the phrase "believing that an official proceeding is pending or about to be instituted." See *State* v. *Ortiz*, 312 Conn. 551, 562, A.3d    (2014). In that case, the court was interpreting the language of the witness tampering statute, General Statutes § 53a-151 (a), which provides: "A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding." The court construed that statute to apply so long as "the *defendant* believes that an official proceeding will probably occur, it does not matter whether an official proceeding is *actually* pending or is about to be instituted." (Emphasis in original.) *State* v. *Ortiz*, supra, 569. It further determined that the phrase "about to be instituted," "signifies probability, as mere temporal proximity does not sufficiently implement the goal of punishing the obstruction of justice." Id. Because the witness tampering statute, § 53a-151 (a), and the intimidating a witness statute, § 53a-151a (a), share similar language and are located within the same part of our criminal statutes, we apply the interpretations of *Ortiz* to our analysis here. See *State* v. *Rivera*, 250

Conn. 188, 201, 736 A.2d 790 (1999) ("in the absence of persuasive evidence to the contrary, we may presume that a word used in different parts of the same statutory scheme has the same meaning").

The record shows that there was sufficient evidence for the jury to find that the defendant believed that an official proceeding probably would occur. In one Facebook message, the defendant acknowledged that the police were "getting warrants" and "building a case" against him. In a different message, the defendant wrote, "I'll eat the charge . . . ." In yet another message, the defendant told Mason that he was "already in enough shit a's it is." From these statements, the jury reasonably could have inferred that the defendant believed that an official proceeding probably would be instituted.

Similarly, the record establishes that there was sufficient evidence for the jury to conclude that the defendant believed that Mason probably would be summoned to testify. The term "witness" is broad, as it includes "any person summoned, or *who may be summoned*, to give testimony . . . ." (Emphasis added.) General Statutes § 53a-146 (6). The Facebook messages show that the defendant knew that Mason had provided a statement implicating him in the cell phone theft. It was therefore reasonable for the jury to infer that the defendant believed that Mason probably would be called to testify in conformity with that statement at a future proceeding.

The record further establishes that there was sufficient evidence for the jury to reasonably find that the defendant intended to influence, delay or prevent Mason's testimony at an official proceeding. For example, in one Facebook message, the defendant wrote, "Ur gonna learn the hard way that snitches get what's comin to em straight the fuck up." In a later message, the defendant wrote: "Bro snitches get fucked up . . . . The term snitches get stitches is because of snitches. . . . U know that this shit isn't gonna just be left alone for what u did. I just hope ur ready and prepared for the repercussions for ur actions cause I sure am. I'll see u very soon." In yet another message, the defendant wrote, "just know that this shit isn't gonna go unsettled and u can take it how u want but shit is gonna get handled . . . ." In his final message, the defendant wrote: "I thought we were straight and u wouldn't be dumb enough to write a statement after telling u that day what we did to the last snitch. . . . [U]r gonna get treated like a snitch u wrote that statement u best be ready for the shit u got urself into. . . . U fucked up I'd watch out if I were u . . . ." A jury reasonably could have inferred that the defendant intended the natural consequences of these threats, which would have included the influence, delay or prevention of Mason's testimony at a future proceeding. See *State* v. *Duncan*,

96 Conn. App. 533, 540, 901 A.2d 687, cert. denied, 280 Conn. 912, 908 A.2d 540 (2006).

Nevertheless, the defendant argues that these messages demonstrate only that he was concerned with Mason's statement to the police and not with preventing Mason's future testimony. As we have stated many times previously: "[T]he [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder or fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Grant*, 149 Conn. App. 41, 46, 87 A.3d 1150, cert. denied, 312 Conn. 907, 87 A.3d 1150 (2014). In the present case, considering the evidence in the light most favorable to sustaining the verdict, the jury reasonably could have concluded that the Facebook messages forecasted future physical harm and that they were sent with the intent to influence, delay or prevent Mason's testimony at an official proceeding.

Accordingly, we conclude that there was sufficient evidence to support the jury's verdict that the defendant was guilty beyond a reasonable doubt of intimidating a witness in violation of § 53a-151a.

The judgment is reversed only with respect to the defendant's conviction of attempt to interfere with an officer and the case is remanded with direction to render judgment of acquittal on that charge and to resentence the defendant on the conviction of intimidating a witness.[5] The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] "Facebook is a social networking website that allows private individuals to upload photographs and enter personal information and commentary on a password protected 'profile.' An individual chooses a name under which the Facebook profile will be listed (user name). Users create networks of 'friends' by sending and accepting friend requests. Subject to privacy settings that each user can adjust, a user's friends can see aspects of the user's profile, including the user's list of friends, and can write comments that appear on the profile. Additionally, any Facebook user can send a private message to any other Facebook user in a manner similar to e-mail." *State* v. *Eleck*, 130 Conn. App. 632, 634 n.1, 23 A.3d 818, cert. granted on other grounds, 302 Conn. 945, 30 A.3d 2 (2011).

[2] At the sentencing hearing, the court stated that the total effective sentence was six years incarceration, suspended after four years, with a period of five years of probation. This appears to have been a misstatement.

[3] After oral argument before this court, we ordered simultaneous supplemental briefs on the applicability of *State* v. *Williams*, 205 Conn. 456, 534 A.2d 230 (1987).

[4] At that time, § 53a-167a (a) provided: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in performance of his duties." General Statutes (Rev. to 1987) § 53a-167a. The subsequent revisions to the statute do not affect our analysis here. See General Statutes (Rev. to 2011) § 53a-167a.

[5] We note that the "aggregate package theory" applies to the procedural circumstances of this case. See *State* v. *Wade*, 297 Conn. 262, 268, 998 A.2d 1114 (2010). Adhering to that theory, we vacate the defendant's total effective sentence in its entirety and direct the trial court to reconstruct the sentence in any way necessary to ensure that the punishment fits both the crime and the defendant, as long as the final sentence does not exceed the original sentence. See id., 271–72.